In re Copley.

(No. 71-639—Decided February 2, 1972.)

*Messrs. Rudd, Zachritz & Silverberg* and *Mr. Anthony J. Zaharieff*, for petitioner.

*Mr. Reynold C. Hoefflin*, prosecuting attorney, for respondent, Russell Bradley, sheriff of Greene County.

HERBERT, J. When considering the allowance or denial of the extraordinary writs alluded to in the Constitution, [1] courts and litigants should always be mindful of the limitations historically and classically inherent in the employment of those vital implements. [2]

This is not to say that case law must be, or is, inflexible. As our society continually churns, new demands are made upon its institutions. When those demands have matured and stabilized, our courts have recognized and accommodated them. See, e. g., the opinion in *Freeman* v. *Maxwell, Warden* (1965), 4 Ohio St. 2d 4, 210 N. E. 2d 885. However, the adhesive which case law imparts to our collective endeavors must be of dependable consistency, and must be available for reliance unless and until a change is clearly mandated. See Cardozo, The Nature of Judicial Process (1921); concurring opinion of Peck, J., in *State, ex rel. Allison,* v. *Jones* (1960), 170 Ohio St. 323, 164 N. E. 2d 417.

In the case at bar, then, the primary inquiry must be directed to the appropriateness of the remedy selected.

In the second paragraph of the syllabus of *Ex parte Van Hagan* (1874), 25 Ohio St. 426, this court stated:

"*Habeas corpus* is not the proper mode of redress, where the relator has been convicted of a criminal offense, and sentenced to imprisonment therefor by a court of competent jurisdiction; if errors or irregularities have occurred in the proceedings or sentence, a writ of error is the proper remedy." See, also, *Burns* v. *Tarbox* (1907), 76 Ohio St. 520, 81 N. E. 761; *In re Burson* (1949), 152 Ohio St. 375, 89 N. E. 2d 651; *Freeman* v. *Maxwell, supra* (4 Ohio St. 2d 4); *Anderson* v. *Maxwell* (1967), 10 Ohio St. 2d 188, 226 N. E. 2d 103; *Bradley* v. *Cardwell* (1969), 20 Ohio St. 2d 1, 251 N. E. 2d 605.

Is the instant petitioner being held pursuant to a valid judgment of conviction by a court of record which had jurisdiction to render that judgment? [3]

---

[1] Sections 2 and 3 of Article IV of the Constitution of Ohio.

[2] See R. C. Chapter 2725, which reflects this history.

[3] For purposes of this decision, we assume that petitioner's being

In its supplemental brief herein, respondent conceded:

"It is the proposition of the state of Ohio in the matter that the primary issue as to whether * * * [an indigent] person can be imprisoned in lieu of payment of fine and court costs has been settled by three recent decisions of the United States Supreme Court. These are the cases of:

"1. *Morris* v. *Schoonfield*, 399 U. S. 508, 26 L. Ed. 2d 733 [773] (1970).

"2. *Tate* v. *Short,* 401 U. S. 395, 28 L. Ed. 2d 130, 91 S. Ct. (1971).

"3. *Williams* v. *Illinois*, 399 U. S. 235, 52 Ohio Ops. 2d 281, 26 L. Ed. 586 (1970).

"An analysis of the decision [*sic*] in those cases leads us to the conclusion that it is now a denial of equal protection of the law to imprison [an indigent person] for payment of fine and costs even where a substantial daily rate is given and the total time does not exceed the maximum possible jail sentence which could have been imposed."

A majority of this court has recently been constrained to reach substantially the same conclusion with regard to the combined mandate of those three cases. *In re Jackson* (1971), 26 Ohio St. 2d 51, 268 N. E. 2d 812.' Accordingly, petitioner argues that the sentencing and imprisonment of *this indigent petitioner* under circumstances denounced in the immediately foregoing cases so tainted the conduct of the sentencing court that it lost its jurisdiction to act, thereby giving rise to the appropriate issuance of a writ of habeas corpus.

The facts presented in this case do not require us to adopt or reject petitioner's jurisdictional argument, since no representations concerning his alleged indigency have

accountable on his own recognizance amounts to at least a constructive detention or holding, a question not raised by the respondent.

'The facts of *In re Jackson* show that Jackson's urging of his indigency did not begin in the sentencing court. However, the respondent in that case did not suggest that such procedure be followed. In the instant case, respondent has made this contention the main thrust of his argument, both orally and in his supplemental brief.

ever been presented to the sentencing court.[5] Petitioner made his allegations in that regard, for the first time, in this court.

Irrespective of other perplexities which may exist in this area of first impression, it is clear that the orderly administration of criminal justice does not permit an allegedly indigent defendant to stand mute, upon the question of his indigency, before the sentencing court, and thereafter collaterally assert a right to release upon that ground.[6]

Upon the instant record, petitioner was duly convicted and sentenced by a court which had jurisdiction to so act, and his detention is pursuant to that proceeding.

We recognize that we, as well as most American courts, are now eking out immediate solutions to new and complex juridical developments. We are not yet called upon to

---

[5] Petitioner argues that, in this case, the sentencing Municipal Court was not the proper forum for such proceedings, contending that all such questions should be presented to a Court of Common Pleas. Respondent urged that the most propitious time for such determination was prior to sentencing and, therefore, that the sentencing court was the far better one to decide the issue of indigency.

As Justice Schneider perhaps understated in his dissent in *Jackson*, *supra*, this new field of the law involves an "administratively difficult area." Nevertheless, a majority of this court feels compelled to enter this potentially pandemonic region by virtue of the United States Supreme Court rulings alluded to heretofore. In so doing, we agree with the respondent's position in this case, and determine that the sentencing court is the one before which allegations of indigency must be first presented and decided.

[6] It also appears arguable that a denial of indigency, after hearing, would be error reviewable upon appeal and not the sort of judicial conduct which would render the sentence imposed subject to collateral attack upon jurisdictional grounds. *Ex parte Van Hagan, supra* (25 Ohio St. 426); *Freeman* v. *Maxwell, Warden, supra* (4 Ohio St. 2d 4).

Upon the question of the proper timing involved in an assertion of indigency, respondent argues that "indigency should be determined as of the date of sentencing and not subsequent thereto." More specifically, at least one of the temptations complained of by petitioner as being inherent in the sentencing of indigents could be laid bare if the claim of that status was first made subsequent to imposition, but prior to execution, of sentence.

answer the administrative questions of how to bring indigency to a sentencing court's attention when that status first arises subsequent to execution of sentence, or what recourse is open if a sentencing court refuses to rule upon a properly presented question of indigency.[7] We are confident that our courts will properly decide those and other issues as they arise in the future.

In the case at bar, it is our conclusion that a writ of habeas corpus should be denied.

*Writ denied and petitioner remanded to custody.*

O'NEILL, C. J., SCHNEIDER, CORRIGAN, STERN and LEACH, JJ., concur.

BROWN, J., not participating.

---

[7] An eventuality which we do not expect will occur subsequent to our announcement of this decision.