SMITH, Judge.
After a county court jury trial in which he was unattended by counsel, petitioner Brooks was convicted of unlawful assembly[1] and malicious trespass [2] and was sentenced to pay a fine of $500.[3] The judg *648 ments were affirmed on his appeal to the circuit court, which found that Brooks “with knowledge of his right to counsel intelligently waived such right.” By petition for writ of certiorari Brooks asserts that the county court did not appropriately caution him against the perils of self-representation and that, in affirming his convictions, the circuit court departed from essential requirements of law securing his right to counsel. We granted the petition, see Dresner v. City of Tallahassee, 164 So.2d 208 (Fla.1964), and have examined the entire appellate record.
This prosecution arose out of the February 1975 demonstrations at the Escambia County jail with which we are concerned in Matthews and Brooks v. State, 336 So.2d 643 (Fla.App.1st, 1976). Matthews and Brooks are black clergymen who led a crowd of approximately 200 demonstrators protesting the shooting death of a black youth and demanding discharge of the deputy sheriff who the grand jury found fired in self-defense. We affirmed the extortion conviction of Matthews, who the evidence showed “consciously embraced fear of bodily injury as an instrument of enforcing otherwise lawful demands,” but reversed that of Brooks for lack of proof that his “participation in the demonstration exceeded the bounds of permissible expression protected by the First and Fourteenth Amendments.” Matthews and Brooks v. State, 336 So.2d at 646.
Shortly after his extortion trial in the circuit court, where the defense was conducted by retained counsel Ed Duffee, Jr., Brooks was scheduled for trial on the present charges in Escambia’s county court. Again his retained counsel was Duffee, who appeared for Brooks, entered a not guilty plea and presented appropriate motions. On the morning of the scheduled trial in Pensacola, Duffee did not appear. After a wait, Brooks and county court Judge Lager-gren telephoned Duffee’s Tallahassee office and spoke with the attorney, who explained that he had failed to note Brooks’ trial date on his calendar and that he was engaged in another trial and unable to leave for Pensacola that day. There is no county court record of the ensuing exchange between Judge Lagergren and Brooks but it is undisputed, as the circuit court noted on appeal, that neither Duffee nor Brooks requested a continuance because of the absence of retained counsel.
Brooks went to trial without counsel. He explained to prospective jurors, during his voir dire examination of them, that “This matter has been pending for quite some time and it’s a strain on me having to worry about this matter, and I wanted to go ahead and get it over with.” Brooks presented testimony and arguments to the court and jury, objected to questions propounded to witnesses by the prosecutor, cross-examined State witnesses and called his own. The circuit court decision accurately recites that Judge Lagergren’s conduct of the trial was solicitous of Brooks and his efforts to defend himself. After deliberating 34 minutes, the jury found Brooks guilty of unlawful assembly and malicious trespass.
At the outset of considering Brooks’ constitutional claims, we put aside entirely the intimation of Brooks’ affidavit, apparently filed during the circuit court appeal without leave, without requesting a remedy and without objection, that the prosecutor and sheriff “pressured” and “pushed” him to go to trial without counsel.[4] After the *649 trial but before the adjudication and sentencing, Brooks retained new counsel who still attends him, and there was ample opportunity to apply in the trial court for appropriate relief on a showing of undue State action which “pressured” Brooks not to claim his right of counsel. Brooks had a further opportunity in the appeal court to seek a remand for findings on that subject. Because Brooks did not do so, there has been no appropriate application for relief and no adversary hearing concerning the State’s asserted misconduct. Having in mind our limited role in common law certio-rari review,[5] we may not credit here the conelusory assertions of Brooks’ affidavit on appeal that “I reluctantly gave in to the pressures of the States Attorney and Sheriff’s Department pushing me to trial.”
The central issue is whether Brooks’ conviction could properly be upheld by the circuit court in the absence of a trial court record demonstrating that, through advice from Judge Lagergren or otherwise, Brooks was
. . made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ ” Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975).
Long before the Sixth Amendment’s guaranty of counsel was held applicable to the States through the Fourteenth,[6] the strong presumption against an accused’s waiver of counsel in federal prosecutions was held to require a convincing record that the accused was suitably cautioned about the dangers and difficulties of self-representation. Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1467 (1937); Von Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1948).[7] *650 The requirement of judicial safeguards against uninformed waiver of the right to counsel is but a corollary of the primary right. Thebe is no record that such safeguards were afforded in this case. That and other circumstances — Brooks’ earlier and considered choice to retain counsel and his abrupt counterchoice in the extremity of attorney Duffee’s absence and inexplicable failure to ask for a continuance — indicate that Brooks was not adequately warned of the dangers of proceeding without counsel.
There was compelling poignancy in Brooks’ thrashing efforts to defend himself at trial. He of course had difficulty with courtroom strategy and procedure. Predictably, his role before the jury as interrogator and advocate made it all but impossible for him also to preserve his right as the accused not to testify and to rely on any weaknesses in the State’s case. More fundamentally still, the conduct for which he was prosecuted involved elements of pure and symbolic speech, protected by the First and Fourteenth Amendments, and there were delicate questions of Brooks’ vicarious responsibility for the malevolence of other demonstrators. See Matthews and Brooks v. State, 336 So.2d 645—46. Although Brooks sensed the presence of those issues, he was incompetent to make them significant factors in his defense. The court’s charge to the jury, uninformed by the influence of a competent defense lawyer, said nothing of protected speech and left undefined the concepts of “malicious trespass” and “unlawful assembly.”[8]
Plain as it is that Brooks’ defense suffered from the absence of a competent lawyer, the circuit court did not depart from the essential requirements of law in refusing on that ground to set aside his conviction. Brooks was fined, not imprisoned, for his offenses. In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Supreme Court held that a person convicted of crime may not be imprisoned unless he has knowingly and intelligently waived the right to counsel or was attended by counsel at trial. Argersinger thus extended the right of counsel to prosecutions for “petty” offenses for which imprisonment results, but stopped short of requiring State implementation of the right of counsel in the great mass of prosecutions where there is either no prospect of imprisonment or, after trial, no imprisonment in fact. Thus the trial court’s failure to warn Brooks concerning the dangers and disadvantages of self-representation was not a constitutional impediment to his conviction. If by withholding imprisonment the State retrospectively avoided any obligation to afford Brooks free counsel, had he been insolvent and desirous of counsel, there could be no duty to admonish Brooks, whether he was solvent or otherwise, concerning the folly of self-representation.
In deciding Argersinger, Justices Powell and Rehnquist would have extended the right of counsel to any case in which “the assistance of counsel is necessary to assure a fair trial,” including those in which “complex legal and factual issues . . . may not be fairly tried if the defendant is not assisted by counsel” and those in which personal “stigma” or injury to substantial property rights and interests will result from conviction. 407 U.S. at 47-49, 92 S.Ct. at 2017-18, 32 L.Ed.2d at 544-45. The majority reserved its opinion of whfether “problems [preventing a fair trial] are raised even in situations where there is no prospect of imprisonment.” 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538.
*651 Notwithstanding the attraction of the Powell-Rehnquist view in the present circumstances, a decent respect for the limits of our own jurisdiction and for the logistical impact of further extending the right to counsel in Florida municipal and county courts requires that we decline -to extend the rule of Argersinger to this case. We therefore hold that Judge Lagergren, having afterwards withheld imprisonment as punishment, had no duty at trial to dissuade Brooks from self-representation or to caution him against it.
We do not ignore or underestimate the facts that Brooks’ defense required handling by a skilled and dedicated lawyer, that Brooks’ first and considered choice was to retain counsel, that Brooks did not appreciate the difficulty of defending himself and that, in addition to exacting a monetary fine, these convictions may deter Brooks in the future free exercise of First Amendment rights.[9] There are unique circumstances here which made Brooks’ self-representation an obviously poor choice. But experienced prosecuting and defense lawyers know that the same is true in every case, whether sentence is imposed or withheld, whether punishment is by fine or imprisonment. The expression “relatively simple cases”[10] may be useful to commentators in making abstract comparisons, but it is meaningless as a description of any single case. So misapplied, as we have said before,[11] such a characterization serves only to deprecate the quality of the advocacy present. There are no “simple” criminal defense representations, and those that seem so a,re merely not understood.
The writ of certiorari is discharged.
BOYER, C. J., and MILLS, J., concur.

. “If three or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall be guilty of [unlawful assembly].” Sec. 870.02, F.S. 1973.

. “Every trespass upon the property of another, committed with a malicious and mischievous intent, the punishment of which is not specially provided for, shall be guilty [sic] of a misdemeanor of the second degree. . . .” Sec. 821.18, F.S. 1973.

. Both offenses charged were misdemeanors of the second degree, punishable by imprisonment for 60 days or by a fine of $500, or both. Secs. 775.082(5)(b), 775.083(4), F.S.1973. The trial court imposed the $500 fine on the unlawful assembly charge and suspended sentence on the conviction for malicious trespass “when the $500 is paid.” The sentence was accompanied by the court’s advice that, failing timely payment, Brooks would be “committed to jail until the monies are paid.” We do not regard that statement as changing the essential character of the nonimprisonment sentence. However, because our decision rests squarely on the trial court’s withholding of imprisonment as punishment, we caution that imprisonment as a means of collecting a fine may constitutionally be imposed only on “a defendant with the means to pay a fine who refuses or neglects to do so.” Tate v. Short, 401 U.S. 395, 400, 91 S.Ct. 668, 672, 28 L.Ed.2d 130, 134 (1971).

. Brooks’ affidavit states:
“July 8, 1975, was the date set by the Court for my trial. At approximately 9:00 on July 8, 1975, I appeared at Judge Lagergren’s office awaiting my trial and fully expecting my attorney, Ed Duffee, to be present to try the case. I waited approximately one hour to one hour and a half for Ed Duffee to arrive, it being suggested by the Judge that he was probably enroute from Tallahassee. Also awaiting his arrival was the State Attorney, Joseph Schiller, Sergeant Jim Edson of the Sheriff’s Department, and Deputy Officers Sandiford and Caldwell.
“The Assistant State Attorney said he was anxious to try the case because he had called two deputies away from family and vacation in Disney World for the trial, and he requested the Judge to place a call to Ed Duffee in Tallahassee. The Judge in fact placed the call to Duffee’s office in Tallahassee for the purposes of ascertaining his whereabouts. At this point in time, the Judge and I talked to Duffee over *649 the telephone and found out that he (Duffee) made a mistake on his calendar and was currently trying another case in Leon County on this date and would not be in Pensacola. With this revelation I did not know what to do.
“The State being anxious for trial because of the inconvenience to the deputy officers, the trial judge inquired of me whether I too was anxious to get this case tried, and further informed me that I could represent myself if I so desired.
“I indicated to the Judge that surely I wanted to get the case over with and that is why it was set for trial in about the next thirty (30) minutes.
“At no time was I ever advised by either the Court or the State Attorney that the trial could be postponed to a later date. If I had known that I could have postponed the trial under these circumstances, even for two or three days, I would have done so. I was totally unprepared to handle the case by myself with only thirty (30) minutes notice that hired counsel would be absent.
“I have since observed two trials of my co-defendant, OTHA LEVERETTE, both of which resulted in hung juries. The charges against him were exactly the same as against myself. I now see clearly the numerous errors I committed in trying my case by myself. There are no words that can describe the comparison between the two LEVERETTE trials with counsel and my trial without preparation, warning, or trial counsel. I was so disappointed, disgusted, and frustrated when my lawyer didn’t show up for trial that I didn’t know what to do. I reluctantly gave in to the pressures of the States Attorney and Sheriff’s Department pushing me to trial. I regret their influencing me, and I would never permit that again.”

. “On a petition for a writ of certiorari to review an order of a circuit court in its appellate capacity, our review is limited to the face of the record to determine whether the circuit court has exceeded its jurisdiction or has otherwise departed from the essential requirements of law. Dresner v. City of Tallahassee, 164 So.2d [at 211], . . Coffman v. State, 292 So.2d 608, 609 (Fla.App.4th, 1974).

. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

. . a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge’s responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused’s professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances . .

. The information was read aloud and was sent to the jury room. It charged that Brooks and others “did unlawfully meet together upon the premises of the County Jail of Escambia County, Florida to commit a breach of the peace or to do an unlawful act or acts . . ” and, as a second count, that Brooks “did unlawfully trespass, with a malicious and mischievous intent, upon the premises of the County Jail . . . During the voir dire examination of veniremen, the trial judge stated that “[t]he elements of these charges will be explained to you later.” That was never done. No point was made of it on Brooks’ counsel-assisted appeal. Contrast Adderley v. Florida, 385 U.S. 39, 43 n. 2, 87 S.Ct. 242, 245, 17 L.Ed.2d 149, 153 (1966).

. A condition of Brooks’ probation on the felony conviction was that he “not conduct or participate in any public demonstrations in the state of Florida or elsewhere.” Matthews and Brooks v. State, 336 So.2d at 644 n. 2. We held that condition impermissibly broad as an explicit term of probation.

. Argersinger, 404 U.S. at 47, 92 S.Ct. at 2017-18, 32 L.Ed.2d at 544 (concurring opinion).

.“Preparation for trial is simple only to the lazy or uninformed. It is complex to lawyers for whom no fact exists if it cannot be proven, who doubt the easy assumption and the merely plausible witness, who exhaust all hypotheses and themselves in tracking the evidence. Such craftsmanship in advocacy is the pride of our judicial system.” State ex rel. Gentry v. Fitzpatrick, 327 So.2d 46, 47 (Fla.App.1st, 1976).