HARRIS, Judge.
Appellant was convicted by a jury in the Circuit Court of Covington County for violating a City ordinance which prohibited the owners of dogs from permitting such dogs to run at large in the City, “unless such dog is wearing a muzzle on its head securing his mouth,” etc. The jury assessed a fine against him for one hundred ($100.00) dollars.
The judgment entry recites that on June 30, 1976, in open court came the City of Andalusia by its attorney and the defendant in his own proper person and with his attorney and the defendant waived arraignment and agreed to go to trial on the original affidavit and complaint from the Recorder’s Court of the City of Andalusia charging him with the violation of Chapter 4, Section 414, of the City Code.
The testimony adduced by the City of Andalusia tended to show that Mr. Eddie Edson, 405 Woodruff Street, of that city, was the owner of two small house dogs, a Boston Terrier and a little Wire-haired Terrier. That about midnight on February 18, 1976, Mr. Edson took these two small dogs out to the carport of his house and turned on the lights. At this moment two large dogs, a German Shepherd and a Collie, attacked the two small dogs right at Mr. Edson’s feet. Mr. Edson grabbed a broom nearby and struck the attacking dogs and broke up the fight. The German Shepherd and the Collie fled south toward Ellis Street where appellant lived. Both Woodruff and Ellis Streets were in the City limits of Andalusia. He stated that the big dogs did not have on muzzles nor did they have on leashes. He said he had never seen these two dogs before that night. He further stated that one of his dogs died shortly after being attacked by the big dogs and he had to carry his other little dog to a veterinarian. Mr. Edson called Mr. Alan M. Cory, Jr., who was employed by the City of Andalusia as an Animal Control Officer and reported the incident to him.
Mr. Cory testified that in response to the call from the Edson house he went to their home. He learned that one of the little dogs was killed in the dog fight and the other one was at the veterinarian. He got a description of the German Shepherd and the Collie and said he knew the two dogs. He went to Ellis Street where appellant lived and saw both dogs at appellant’s house, but the Gatlins were not at home.
*39 He further testified that he went back that night and saw appellant. He told appellant that he had a report that his dogs had been running loose and had killed one dog and injured another. That appellant told him that the two dogs did not belong to him and that he was not going to replace anything and that he wasn't responsible to anybody. Appellant further said he wasn’t going to pay a _ penny to anyone. This witness further stated that he was going to pick up these two dogs and appellant told him to pick them up. The next morning he picked up the two dogs and carried them to Dr. Louis Jones, a veterinarian in Andalusia. He stated that at the time he picked them up they were running loose at appellant’s house and were not muzzled.
On cross-examination Mr. Cory testified that he had seen both of these dogs at appellant’s house several weeks before the night they attacked the Edsons’ dogs.
On redirect examination Mr. Cory stated that when he talked to appellant about these two dogs he did not deny that he owned the dogs.
Dr. Louis Jones, the veterinarian, testified that Mr. Cory delivered three dogs to him on February 20, 1976; one dog was dead on arrival. The other two dogs were a German Shepherd and a Collie. Dr. Jones further testified that these dogs were vicious and he kept them confined from February 20 to March 1, 1976. That on March 1, appellant’s wife called and gave him permission to put the Collie to sleep.
Police Officer J. D. Shakespeare accompanied Mr. Cory to appellant’s home on the 20th day of February, 1976. At that time he saw the Collie and the German Shepherd dogs in appellant’s yard but appellant was not at home. On the following Friday he had an arrest warrant and he went to appellant’s home and took him into custody.
Appellant testified in his behalf and stated that he lived at 420 Ellis Street in the City of Andalusia and that he did not know anything about a dog fight taking place in his neighborhood on the night that Mr. Ed-son’s dogs were attacked by a Collie dog and a German Shepherd. He stated that he did not own either one of these dogs but they just started hanging around his house; that at one time he hauled one of the dogs away and a couple of days later the dog reappeared. He further stated that he never fed these dogs. He admitted that everyone in the neighborhood looked on these dogs as belonging to him but he stated that they were not his.
There was no motion to exclude the City’s evidence; there was no motion for a new trial; there was no request for the affirmative charge; no exceptions were reserved to the oral charge of the Court and there were no adverse rulings on the admission of evidence that contained any merit. In this state of the record the sufficiency of the evidence is not presented to this Court for review. Jones v. State, 55 Ala.App. 466, 316 So.2d 713; Mosley v. State, 54 Ala.App. 59, 304 So.2d 613; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62.
After the jury returned a verdict finding defendant guilty as charged and assessing a fine of $100.00 against him, the judgment entry shows that the fine and costs were not paid and defendant was sentenced to 30 days hard labor for the City of Andalusia to pay the fine and an additional eight days hard labor for the City of Andalusia to pay the Court costs at the rate of $7.50 per day.
The only issue raised on this appeal concerns the sentence of 38 days hard labor for the City of Andalusia for the non-payment of the fine of $100.00 and the costs of $58.25. This is based on the ground that the appellant is indigent and under both federal and state cases an indigent cannot be sentenced to serve time for the non-payment of a fine and costs. This is the law as laid down in the following cases: Dorch v. City of Opelika, 50 Ala.App. 612, 281 So.2d 666; Lingle v. State, 51 Ala.App. 210, 283 So.2d 660; Morris v. Schoonfield, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773; Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130; Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586.
*40 We have carefully searched the entire record in this case and nowhere does it appear that prior to arraignment and trial, the appellant was declared to be an indigent and an attorney appointed to represent him. There was absolutely no finding of indigency until after arraignment, trial, conviction and sentence. The trial court then declared the appellant indigent and ordered a free transcript furnished him and appointed trial counsel to represent him on appeal. Therefore, the above-cited cases do not control this appeal.
We have had numerous cases where defendants were represented by counsel of their own choice, and after conviction they were found to be indigent and furnished a free transcript and either trial counsel or new counsel was appointed to represent them on appeal.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
TYSON, P. J., and DeCARLO, J., concur.
BOOKOUT, J., concurs in part and dissents in part, in which CATES, J., joins.