Timothy DRAIN *v.* STATE of Arkansas

CA CR 83-122                                   664 S.W.2d 484

Court of Appeals of Arkansas
En Banc
Opinion delivered February 8, 1984
[Rehearing denied March 7, 1984.]

*Michael Dabney,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Velda P. West,* Asst. Atty. Gen., for appellee.

DONALD L. CORBIN, Judge. On January 9, 1979, appellant, Timothy Drain, pleaded guilty to burglary and theft of property and received a three-year suspended sentence on conditions. One of the conditions was that appellant pay court costs of $43.00 and a fine of $500.00 payable $50.00 per month beginning February 10, 1979. On July 7, 1980, a year and a half later, appellant had paid the $43.00 in court costs but only $15.00 toward the $500.00 fine. On July 7, 1980, appellant was arraigned for revocation. He made a pauper's oath and the trial court appointed the Washington County Public Defender to represent him. At this time, the court granted appellant an additional 60 days to pay the $485.00 balance after accepting a plea of guilty to having failed to make payments on the fine. In an order dated September 10, 1980, defense counsel and the State agreed that appellant would be granted until November 15,

1980, to pay his fine, due to appellant's having been civilly committed to the Arkansas Mental Hospital. On December 11, 1981, the State again petitioned the court to revoke appellant's suspended sentence but appellant was not arrested until October 18, 1982. A hearing was finally held on February 18, 1983, when appellant's suspended sentence was revoked and he was sentenced to serve three years in the Department of Corrections. Appellant's original suspended sentence would have ended on January 9, 1982.

The only issue raised by appellant is whether or not under the testimony at the hearing, appellant was indigent so that the court should not have incarcerated him for nonpayment of his fine. Stated more succinctly, was appellant's nonpayment of the fine deliberate or was it because of his inability to pay? It is well settled that we will not overturn a decision in the trial court to grant a petition to revoke unless it is clearly against the preponderance of the evidence. *Cureton* v. *State*, 266 Ark. 1034, 589 S.W.2d 204 (Ark. App. 1979).

Appellant contends that Ark. Stat. Ann. § 41-1103 (Repl. 1977) applies, which provides in part:

(2) Unless the defendant shows that his default was not attributable to a purposeful refusal to obey the sentence of the court, or to a failure on his part to make a good faith effort to obtain the funds required for payment, the court may order the defendant imprisoned in the county jail or other authorized institution designated by the court until the fine or costs or specified part thereof is paid. The period of imprisonment shall not exceed one (1) day for each ten dollars ($10.00) of the fine or costs, thirty (30) days if the fine or costs were imposed upon conviction of a misdemeanor, or one (1) year if the fine or costs were imposed upon conviction of a felony, whichever is the shorter period.

This statute basically codifies the principles established by the cases of *Tate* v. *Short*, 401 U.S. 395 (1971), and *Williams* v. *Illinois*, 399 U.S. 235 (1970), both of which stand

for the proposition that a sentence to imprisonment for nonpayment of a fine works an invidious discrimination against indigent defendants in violation of the equal protection clause of the Fourteenth Amendment.

The State, on the other hand, contends that this case is governed by subsections 4 through 6 of Ark. Stat. Ann. § 41-1208 (Repl. 1977). Those subsections read as follows:

(4) If the court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his suspension or probation, it may revoke the suspension or probation at any time prior to the expiration of the period of suspension or probation.

(5) The court may revoke a suspension or probation subsequent to the expiration of the period of suspension or probation, provided defendant is arrested for violation of suspension or probation, or a warrant is issued for his arrest for violation of suspension or probation, before expiration of the period.

(6) If the court revokes a suspension or probation, it may enter a judgment of conviction and may impose any sentence on defendant that might have been imposed originally for the offense of which he was found guilty, provided that any sentence to pay a fine or to imprisonment when combined with any previous fine or imprisonment imposed for the same offense shall not exceed the limits of sections 901 [§ 41-901] or 1101 [§ 41-1101], or, if applicable, section 1001 [§ 41-1001]. [Acts 1975, No. 280, § 1208, p. 500.]

The State contends that "an inexcusable failure to comply with a condition of suspension" was shown pursuant to subsection 4, arguing that appellant was given a fine to pay as a condition of his suspended sentence. The State further argues that appellant was not imprisoned because he did not pay his fine but because he violated one of the conditions of his probation. The State believes this revocation was not the invidious discrimination envisioned in *Tate, supra.* It is

unnecessary to decide which of the above statutes is applicable as we reverse and dismiss on the following basis.

We believe the recent case of *Bearden* v. Georgia, 102 S. Ct. 3482 (1983), is dispositive of the issue in the case at bar. The probation of the defendant in *Bearden, supra,* was revoked after a hearing on the grounds that the defendant had failed to pay a fine and restitution upon which his probation had been conditioned. The defendant had borrowed funds to pay part of the amount owed but subsequently lost his job. Despite repeated efforts, the defendant was unable to pay the balance of his fine and restitution within the set time period. On appeal, the Georgia Court of Appeals rejected defendant's claim that imprisoning him for his inability to pay the fine and make restitution violated the equal protection clause of the Fourteenth Amendment. The Georgia Supreme Court denied review and on certiorari to the United States Supreme Court, the case was reversed and remanded. Justice O'Connor, in writing for the majority, stated:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

Justice O'Connor, in discussing the facts of the case, went on to state:

> At the parole revocation hearing, the petitioner and his wife testified about their lack of income and assets and of his repeated efforts to obtain work. While the sentencing court commented on the availability of odd jobs such as lawn-mowing, it made no finding that the petitioner had not made sufficient bona fide efforts to find work, and the record as it presently stands would not justify such a finding. . . . The State argues that the sentencing court determined that the petitioner was no longer a good probation risk. In the absence of a determination that the petitioner did not make sufficient bona fide efforts to pay or to obtain employment in order to pay, we cannot read the opinion of the sentencing court as reflecting such a finding. Instead, the court curtly rejected counsel's suggestion that the time for making the payments be extended, saying that 'the fallacy in that argument' is that the petitioner has long known he had to pay the $550 and yet did not comply with the court's prior order to pay. App. 45. The court declared that 'I don't know any way to enforce the prior orders of the Court but one way,' which was to sentence him to imprisonment. *Ibid.*

> The focus of the court's concern, then, was that the petitioner had disobeyed a prior court order to pay the fine, and for that reason must be imprisoned. But this is no more than imprisoning a person solely because he lacks funds to pay the fine, a practice we condemned in *Williams* and *Tate.* By sentencing petitioner to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders, the court automatically turned a fine into a prison sentence.

The facts in *Bearden, supra,* and in the instant case are similar. Here, appellant testified that he was just barely making it, that he was laid off, had no job, and was behind

on child support payments. He further testified that he was cutting and selling firewood when he could and looking for a job. He testified that he only had an eighth grade education. His brother-in-law, Johnny Sylvester, testified that there was not much money in cutting wood, that he had been cutting wood with appellant, and they had not been making much money. He said he had never seen appellant with more than $20.00 at one time. In response to questions concerning his looking for work, appellant said he had made application everywhere he could think of, mostly at roofing companies because all he knew how to do was roofing or construction work. He admitted that he smoked and that his sister had given him a pack of cigarettes that morning. When asked when he last purchased a pack himself, he said it was over a week ago, "cause I don't have no money."

The following remarks were made by the State in its closing argument at the revocation hearing of February 18, 1983, pertaining to its concern in regard to appellant's failure to pay the fine:

> Your Honor, as this Court realizes, the Judgment in this case came down January 29th, of '79, and that has been over four years ago. On the $500.00 fine, Defendant has paid a grand total of $15.00, and the State just can't believe in four years a person couldn't make a good faith effort to pay off that fine. It's a reasonable fine, yet he has only come up with $15.00. We would ask the Court to enforce its Order and send Mr. Drain down to the penitentiary.

The above appears to be the same conclusion reached by the trial court in sentencing appellant.

As stated in *Bearden, supra,* the decision to place the defendant on probation reflects a determination by the sentencing court that the state's penological interests did not require imprisonment. The trial court below originally found no purpose would be served by sentencing appellant to serve a prison term but instead elected to fine appellant and suspend the sentence. Appellant conducted himself

appropriately during his probationary period but was involuntarily unable to pay his fine. At earlier revocation proceedings, the trial court should have explored alternatives to the fine when it became apparent that appellant was unable to earn the funds necessary to pay the fine. We believe the record reflects bona fide efforts on appellant's part to obtain employment. Justice O'Connor in *Bearden, supra*, emphasized that the trial court could have reduced the fine, or directed that the probationer perform some form of labor or public service in lieu of the fine. We recognize that the State has an interest in punishment and deterrence, and likewise, is justified in pursuing a revocation of probation and the sentencing of a probationer for nonpayment of a fine when the defendant has willfully failed to pay the fine or failed to make bona fide efforts to do so. Pursuant to the authority of *Bearden, supra*, we normally would reverse and remand with directions to the trial court to make inquiry into alternative means of enforcement; however, the trial court, pursuant to the authority of *Easley* v. *State*, 274 Ark. 215, 623 S.W.2d 189 (1981), no longer has authority to revoke the probation. In that case the Arkansas Supreme Court reversed the trial court for revoking a 5-year suspended sentence on a date more than five years after the guilty plea was accepted and the suspended sentence was imposed.

Here, appellant's plea of guilty was accepted on January 9, 1979, and he was sentenced to three years which were suspended on condition. The sentence was not in accordance with the law in effect at that time, see *Culpepper* v. *State*, 268 Ark. 263, 595 S.W.2d 220 (1980), but the issue has not been raised by appellant. However, his original sentence ended on January 9, 1982, and under the authority of *Easley, supra*, it is now too late to revoke the suspended sentence which ended on January 9, 1982. Therefore, there is no reason to remand, so this matter is reversed and dismissed.

Reversed and dismissed.

CLONINGER and GLAZE, JJ., concur.

LAWSON CLONINGER, Judge, concurring. I agree only

with the result achieved by the majority of the court in this case.

The original sentence was improper. On January 9, 1979, appellant was "sentenced to three (3) years in the State Penitentiary suspended on each charge to run concurrent, upon the following conditions . . ." This was a suspended execution of a pronounced sentence, and that method of sentencing is not sanctioned by the 1976 Criminal Code. See Ark. Stat. Ann. § 41-803(4) (Repl. 1977); *Culpepper* v. *State*, 268 Ark. 263, 595 S.W.2d 270 (1980); *McGee* v. *State*, 271 Ark. 611, 609 S.W.2d 23 (1980). Having accepted the sentence, however, appellant now has no legal standing to complain. See, *McGee* v. *State, supra.*

In this case, the trial court had no jurisdiction to impose any sentence on appellant, because the term to which he had been sentenced expired on January 9, 1982, some thirteen months before a hearing on the revocation petition was held. Jurisdiction of the subject matter is always open and cannot be conferred by consent or waiver. *Haskins* v. *State*, 264 Ark. 454, 572 S.W.2d 411 (1978). Jurisdiction is not preserved by the provisions of Ark. Stat. Ann. § 41-1208 (Repl. 1977), which states that the court may revoke a suspension or probation subsequent to the expiration of the period of suspension or revocation, provided a warrant is issued for his arrest for violation of the terms of his suspension or probation, before expiration of the term. Section 41-1208 is a part of the 1976 Criminal Code and could be intended to apply only to suspension or probation as defined in the Criminal Code, § 41-803(4), *supra.* I would reverse and dismiss the judgment of the trial court on the basis of lack of jurisdiction.