WALKER, APPELLEE, *v.* STOKES, APPELLANT.

(No. 36272—Decided August 18, 1977.)

*Mr. Thomas E. Frye,* for appellee.
*Mr. Cornelius A. Manly* and *Mr. Franklin J. Hickman,* for appellant.

120

JACKSON, J.  This controversy comes before us on appeal for a second time after more than four years of litigation. We find that for a second time we must reverse the decision of the Juvenile Court and remand for further proceedings. The appellee, Janice Walker, filed a complaint in bastardy against the appellant, Keith Stokes, in May of 1973. Prior to the first trial in this action the appellant filed a motion for blood tests to determine paternity, together with an affidavit of indigency, praying that the expense of the blood tests be taxed as costs. The motion was over ruled by the lower court and no tests were taken. The appellant was subsequently found guilty by a jury and adjudged by the Juvenile Court to be the reputed father of the illegitimate child of the appellee.

On appeal, this court reversed the decision of the trial court and held that:

"Once the State of Ohio granted all defendants in bastardy proceedings, which are 'quasi criminal' in nature, the right to a blood test to determine paternity, it cannot deny this right to those defendants who are unable to pay the required fee in advance, without violating the equal protection clause of the United States Constitution, because such a defendant's ability to pay in advance bears no rational relationship to his guilt or innocence and to discriminate upon this basis constitutes that type of invidious discrimination which is constitutionally prohibited." Walker v. Stokes (1975), 45 Ohio App. 2d 275, 278.

On remand, but prior to the second trial, appellant properly filed with the Juvenile Court an affidavit of prejudice and disqualification. In the affidavit appellant sought the removal of the assigned trial judge, Angelo J. Gagliardo. The affidavit alleged that in an unrelated action Judge Gagliardo had signed, sworn and caused to be served on the appellant's attorney, Cornelius A. Manly, a motion to show cause why he should not be held in contempt for statements made by him in a petition for a writ of mandamus filed in the Court of Appeals.[1]

[1]The affidavit alleged that in his motion to show cause Judge Gagliardo stated that Mr. Manly had made false and untrue statements of

The record does not disclose that the affidavit of prejudice against Judge Gagliardo had been passed upon by the Chief Justice on the date scheduled for the trial, March 30, 1976, and the appellant, prior to the impaneling of the jury, moved the trial judge to disqualify himself. The motion was overruled and the trial proceeded. On March 31, 1976, the jury again returned a verdict of guilty and the appellant was adjudged by the court to be the reputed father of appellee's illegitimate child.

The day after the court entered this judgment, pursuant to R. C. 3111.17, the court ordered the appellant to pay the appellee for her support, maintenance and necessary expenses caused by the pregnancy and childbirth, as well as the costs of the action. The court further ordered periodic support payments for the continued support maintenance of the child.

The appellant failed to immediately pay this support award and he was ordered incarcerated by the trial court, pursuant to R. C. 3111.17. On April 8, 1976, the record reveals that the maternity expenses were paid into the court.

The appellant appeals the judgment of the trial court and assigns three errors:

"I. When an affidavit of prejudice has been properly filed with the clerk of courts, a trial judge is without authority to proceed with the case or to enter judgment therein, until the Chief Justice of the Ohio Supreme Court has passed upon the issue of disqualification.

"II. Sections 3111.17 and 3111.18 O. R. C. are unconstitutional on their face and/or as applied in the in-

fact in his petition for the writ and further had called into question the truthfulness of Mr. Manly in a legal proceeding. The affidavit further stated that in a second mandamus action then pending in the Ohio Supreme Court, Judge Gagliardo had called into question appellant's attorney's truthfulness and that the judge had failed and refused to meet with counsel concerning an agreed statement of the evidence in that case. The affidavit stated that these actions of the judge demonstrated an interest, bias and/or prejudice which, under R. C. 2701.03, causes him to be disqualified to sit in the instant case.

. The record does not reveal what, if any, action was taken by the Chief Justice on this affidavit.

stant case since the statutes require that juvenile judges incarcerate indigent defendants in paternity proceedings for a minimum of three months solely because of their inability to post security for costs described in the statute.

"III. It is a jurisdictional prerequisite to a finding of guilt in a paternity action under R. C. 3111.01 that the complainant be found to be unmarried at the time of the filing of the complaint."

In *Cuyahoga Co. Bd. of Mental Retardation* v. *Association* (1975), 47 Ohio App. 2d 28, 35, this court determined, in the following language, the effects of the filing of an affidavit of disqualification on the authority of the trial court to proceed in the action:

"* * * [T]he 'mere filing' of such an affidavit does have at least a temporary effect; it deprives the trial judge of the power to proceed on the case until such time as the affidavit of disqualification has been ruled upon by the Chief Justice of the Supreme Court."

The appellee argues that our holding in *Mental Retardation* is inapplicable in the instant action as the affidavit of disqualification was not filed within the time prescribed by R. C. 2701.03.[2] The time requirement of R. C. 2701.03 is not mandatory. If there appears reasonable cause for the failure on the part of the litigant filing the affidavit to observe the statute, the affidavit may still be found to be well taken by the Chief Justice, *Wolf* v. *Marshall* (1929), 120 Ohio St. 216; *Cameron* v. *Gordon* (1940), 33 Ohio Law Abs. 182.[3]

Whether an affidavit of disqualification is timely filed is an issue to be determined by the Chief Justice alone, pursuant to the authority contained in R. C. 2701.03. Until such determination is made and the issue of disqualifica-

---

[2] R. C. 2701.03 provides that an affidavit of disqualification "* * * shall be filed not less than three days prior to the time set for the hearing in such matter or cause."

[3] In the case at bar the affidavit was filed on Friday, March 26, 1976, only two pleading days prior to trial, see Civ. R. 6(A). The affidavit alleged, however, that Mr. Manly had been served with the motion to show cause on the previous day, March 25, 1976. Hence, the appellant appears to have filed the affidavit at his earliest opportunity.

tion is passed upon, the trial judge is bound by the holding in *Mental Retardation* and is without authority to proceed with the case or to enter judgment therein.[4]

In the instant case as the affidavit was apparently not passed upon by the Chief Justice prior to or on the date of trial, every act of the trial judge subsequent to the filing of the affidavit was fatally defective. On that basis we find the appellant's first assignment of error is well taken.

In his second assignment of error appellant urges R. C. 3111.17 and 3111.18 are unconstitutional as a denial of equal protection of the laws. We agree.

R. C. 3111.17 provides, in part, that after the defendant has been adjudged the reputed father of the child:

"* * * If the child is alive, the court *shall* adjudge that he pay to the complainant the sum the court finds necessary for her support and maintenance, and the necessary expenses caused by pregnancy and childbirth, together with costs of prosecution, and that a reasonable weekly sum be paid complainant for support and maintenance of the child until he becomes eighteen years of age. * * * The court *shall* further require the reputed father to give security for the payment of support, maintenance, and necessary expenses of the complainant caused by the pregnancy and childbirth, together with the costs of prosecution. *If the accused neglects or refuses to give such security other than for the payment of costs, he shall be committed to the jail of the county,* there to remain, except as provided in section 3111.18 of the Revised Code, until he complies with the order of the court." (Emphasis added.)

R. C. 3111.18 allows a reputed father to apply for release from jail on the basis of indigency only after three months incarceration. This statute provides in part:

"After having been confined in jail for three months for failure to comply with section 3111.17 of the Revised Code, the putative father, upon three days' notice to the complainant or her attorney, may apply to the trial judge for his release. After hearing, and upon a finding of such

---

[4]Except, of course, for those instances enumerated in note 3 of *Mental Retardation, supra,* at 37.

judge that the defendant is unable to pay or give the security for the payment of the support, maintenance, and' necessary expense of the complainant caused by pregnancy and childbirth together with the costs of prosecution, such judge *may* order the putative father released' without bond, *upon condition that he pay a weekly sum on such expenses and court costs until they are paid in full.* \* \* \*" (Emphasis added.)

Pursuant to these statutes, after a defendant has been found to be the reputed father the court is under a mandatory obligation to assess the costs of support and maintenance against the defendant. If the defendant is indigent and therefore unable to pay the support, the court is under a further mandatory obligation to incarcerate him. No incarceration is provided in the statute for a defendant who is able to and does provide immediately the support adjudged by the court.

Release because of indigency can only occur after the defendant has served a minimum three months in jail. No maximum term is provided by the statutes and the defendant's release is discretionary with the court.[5] After his release from incarceration the indigent defendant is still under the obligation to pay the amount originally determined by the court to be necessary for support.

The indigent defendant is subject both to a term of incarceration and the payment of support, while those who are able to immediately provide support are only obligated to make payments of support. Such discrimination between classes of reputed fathers is unconstitutional in violation of the Equal Protection Clause of the Fourteenth Amendment because it is based solely upon the wealth of the defendant.

In *Griffin* v. *Illinois* (1956), 351 U. S. 12, 19, the Supreme Court held that the failure to provide an indigent criminal defendant with a trial transcript at public expense in order to prosecute an appeal was a violation of the Equal Protection Clause:

---

[5]R. C. 3111.18 provides that after three months the court "may" order the putative father released.

"There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."

Since *Griffin,* the Court has consistently attempted to mitigate the disparate treatment of indigents in the criminal process. *Williams* v. *Illinois* (1970), 399 U. S. 235, held unconstitutional an Illinois procedure which allowed for the imprisoning of indigent criminal defendants for a period beyond the maximum prison term authorized by statute for failure to pay a fine imposed:

"A State has wide latitude in fixing the punishment for state crimes. * * * However, once the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." *Id.,* at 241, 242.

*Williams* was followed in *Tate* v. *Short* (1971), 401 U. S. 395, where the petitioner was imprisoned for failure to immediately pay $425 in traffic fines. Texas had legislated a "fines only" policy for traffic offenses but allowed imprisonment to satisfy the fines if the convicted defendant was unable to pay. The petitioner applied for a writ of habeas corpus alleging that he was being imprisoned only because he was too poor to pay the fines. The Texas courts denied the writs but were reversed by the Supreme Court. In his majority opinion Mr. Justice Brennan stated that:

"Since Texas has legislated a 'fines only' policy for traffic offenses, that statutory ceiling cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine. Imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant cannot pay because he is indigent and his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment." *Id.,* at 399.

126

The holding in *Tate* is applicable to the instant case. Ohio has legislated a policy of "fines only" in bastardy actions[6] for reputed fathers who are able to immediately pay for the support and maintenance of the mother and child, but subjects an indigent defendant without the means to pay the award to a jail sentence. Further, unlike *Tate*, the jail sentence does not reduce or remove the amount of the award imposed. The indigent defendant is still obligated to pay the full amount awarded as support after his release. Such a statutory scheme is inconsistent with the Equal Protection Clause of the United States Constitution.

As in *Tate* this court can determine no penal objective furthered by such discrimination based solely upon the wealth of the reputed father. Certainly, the plaintiff and child are not benefited because they must wait a minimum of three months, until the reputed father is released from prison, prior to receiving any of the support ordered by the court.

The appellant's second assignment of error is well taken, and we hold that provisions of R. C. 3111.17 and 3111.18 are unconstitutional as a denial of equal protection insofar as they allow for the imprisonment of indigent reputed fathers solely because they are unable to pay the support and maintenance adjudged as necessary by the court.

Nothing in this opinion should be interpreted as holding that the court cannot enforce such support orders against those who have the ability to provide for the support of the plaintiff and child by means of its contempt power. The legislature, however, cannot provide for different punishments against reputed fathers in a bastardy action, which is quasi-criminal in nature,[7] when the only

[6]A bastardy action "* * * is not a suit to recover a sum of money owing from the defendant. * * * The statute is in the nature of a police regulation. * * * The act of the putative father is regarded as an offense against the peace and good order of society; and the penalty which the law imposes for his transgression, is to enforce upon him the duty of making provision for the maintenance of his illegitimate offspring." *Musser* v. *Stewart* (1871), 21 Ohio St. 353, 356-357.

[7]See, *State, ex rel. Gill,* v. *Volz* (1951), 156 Ohio St. 60.

distinction between defendants is their economic status and ability to pay the awards assessed.

The appellant's third assignment of error arguing that the verdict of the jury is against the manifest weight of the evidence is also well taken. A suit in bastardy is controlled by R. C. 3111.01, which provides:

"*When an unmarried woman,* who has been delivered of, or is pregnant with, a bastard child, makes a complaint in writing, under oath, before a judge of a county court or in juvenile court, charging a person with being the father of such child, the judge shall issue his warrant, directed to any sheriff, police officer or constable commanding him to pursue and arrest such accused person in any county and to bring him forthwith before such judge to answer such complaint." (Emphasis added.)

This statute has been interpreted to require a woman to be unmarried at the time she files the complaint in bastardy, regardless of her marital status at the time of conception or delivery, *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228.[8] It is therefore a necessary element in the proof of the plaintiff's case to demonstrate that she was unmarried at the time of the filing of the complaint.

We have searched the record in the instant case and have been unable to find any testimony or other evidence adduced at trial which would establish that the appellee was unmarried when this suit was filed in May of 1973. As there is no credible evidence supporting the conclusion that the plaintiff was unmarried at that time, the verdict of guilty and the subsequent finding by the court that the appellant is the putative father of appellee's child are not supported by the weight of the evidence.

The verdict and judgment of the Juvenile Court is accordingly reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

Day, C. J., and Stillman, J., concur.

---

[8]A married woman may bring an action in the Court of Common Pleas for necessaries furnished the child or future support or both, *Franklin* v. *Julian, supra.*