[Cite as *State v. Harris*, 2012-Ohio-802.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96460–96461, 96660–96661**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES HARRIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-535479 and CR-540287

**BEFORE:**    Cooney, P.J., Keough, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   March 1, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

Erika B. Cunliffe
Cullen Sweeney
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113

**AMICUS CURIAE**

James L. Hardiman
Anthony W. Scott
ACLU of Ohio, Inc.
Max Wohl Civil Liberties Ctr.
4506 Chester Avenue
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Mary McGrath
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, P.J.:

{¶1} Defendant-appellant, James Harris ("Harris"), appeals the revocation of his community control sanctions in one case and the resulting imposition of sentence. He also appeals the denial of two motions to vacate his guilty pleas in two cases. We find no merit to the appeal and affirm.

{¶2} This case involves four consolidated appeals arising from two criminal cases in common pleas court. In CR-535479, Harris was charged on March 19, 2010 with criminal nonsupport for his failure to provide child support to his daughter who is now emancipated. In CR-540287, he was charged on July 30, 2010 with criminal nonsupport for his failure to provide child support to a second daughter.

{¶3} In September 2010, Harris pled guilty to the indictments in both cases. The court sentenced him to five years of community control sanctions with conditions that included verifying five job applications per week until gaining full-time employment, maintaining employment, and making payments toward the agreed amount of restitution and support arrearage. In CR-535479, the juvenile court had previously ordered Harris to pay $397.80 per month toward a child support arrearage of $19,429.12. In CR-540287, the juvenile court had previously ordered him to pay $404.39 per month toward the child support arrearage of $11,988.88.

{¶4} On December 15, 2010, the court held a community control sanctions violation hearing. The court told Harris he was in violation but did not "violate" him and

instead allowed community control to continue.[1] (Tr. 6, 9.) The court held another community control sanctions violation hearing on January 27, 2011. The court found him to be in violation and sentenced him to a year-long prison term in one case but continued the community control sanctions in the second case, stayed until Harris was released from the one-year term of incarceration. Harris appeals the judgments in both cases.

{¶5} On March 1, 2011, Harris filed motions to withdraw his guilty pleas in both cases. The court denied both motions, and Harris appealed.

{¶6} The four appeals have been consolidated, and together, Harris raises two assignments of error.

### Inability or Unwillingness

{¶7} In his first assignment of error, Harris argues that the trial court violated his rights to due process and equal protection when the court found that he had violated community control without first determining whether Harris had the ability to pay. In an amicus brief, the American Civil Liberties Union of Ohio ("ACLU") makes the same argument.

{¶8} Harris did not object at the sentencing hearing to the court's order of restitution in either case, nor did he object to the amount he was ordered to pay. As such,

---

[1]The docket, however, reflects Harris was not in violation as a result of the December 15th hearing.

Harris has waived all but plain error.  *See, e.g., State v. Williams*, 8th Dist. No. 93625, 2010-Ohio-3418, ¶ 8–9.

{¶9}  Crim.R. 52(B) provides that "plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, in order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the proceedings clearly would have been different but for the error.  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.   For the following reasons, we do not find plain error.

{¶10}  R.C. 2929.18(A) provides, in relevant part, that a court may sentence an offender to a financial sanction, including:

> (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court. * * * If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence  investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information * * *.  If the court decides to impose restitution, the court shall hold a hearing if the offender, victim, or survivor disputes the amount.

{¶11}  Despite his present assertions, Harris agreed to pay the restitution and support arrearage in open court at the sentencing hearing.  While explaining the conditions of his community control sanctions, the court stated:

> The other thing is you've got to get full-time employment.  You must get full-time employment.  What does that mean?  That means that if you don't have a job, I want you to show — * * *

You have to show five applications a week that you're applying for a job, okay? You have to show what applications you put out there, what efforts you're doing. Because you know what? Quite frankly, some guys say, You know what? I owe all this money. I'm not going to work for free. Why work? That doesn't go with me, nor Ms. Stroh. That's why I have her monitoring you.

Ms. Stroh will monitor you and make sure you're making the restitution payments.

**{¶12}** The court further explained that if Harris's income with a new job is less than his previous employment as a paralegal at Jones Day, he should apply for a modification of his child support obligations. The court emphasized, however, that it expects a payment to be made every month. To that end the court explained:

[W]hat I'm telling you is I want you working at Burger King, I want you working at some store. You need to make payments here. Are you with me?

THE DEFENDANT: Yes, sir.

**{¶13}** Finally, the court reiterated the condition that Harris produce evidence of a good faith job search by submitting copies of five applications per week to his probation officer. Again, Harris indicated that he understood the court's expectations. He never objected to the ordered restitution or challenged the five-applications-per-week requirement.

**{¶14}** In addition, the record indicates that the court obtained a presentence investigation report prior to sentencing. The report included information regarding the juvenile court child support orders, the amount of arrears, and the monthly payment. As

previously stated, R.C. 2929.18(A)(1) permits the trial court to base the restitution on an amount recommended by the presentence investigation report.

{¶15} Further, regarding Harris's claim that the court erred by ordering restitution without conducting a hearing, R.C. 2929.18(A)(1) states, "[i]f the court decides to impose restitution, the court shall hold a hearing on restitution *if the offender, victim, or survivor disputes the amount*." (Emphasis added.) No one disputed the amount of restitution and support arrearage ordered. Thus, the trial court was not required to hold a separate hearing on restitution, especially because the arrearage was established by juvenile court.

{¶16} Harris and the ACLU contend that ordering restitution, without determining whether Harris had the ability to make the ordered payments, violated his constitutional rights to due process and equal protection. The Ohio and United States Constitutions prohibit the trial court from incarcerating a person for simply failing to pay a debt or fine. *See, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 667, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Williams v. Illinois*, 399 U.S. 235, 244, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).

{¶17} To imprison someone solely because he is unable to pay a fine also violates the Equal Protection Clause of the Fourteenth Amendment, because people without the means to pay fines would receive more severe punishment than those who are

capable of paying. *See, e.g.*, *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Walker v. Stokes*, 54 Ohio App.2d 119, 123, 375 N.E.2d 1258 (8th Dist.1977).

{¶18} Both Harris and the ACLU rely on the above-cited cases to support their arguments. However, they fail to recognize the distinction identified in these cases, between a simple inability to pay and an intentional failure to seek employment and/or make payments. In *Bearden*, the U.S. Supreme Court stated that the issue presented "is whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, *absent evidence and findings that the defendant was somehow responsible for the failure* or that alternative forms of punishment were inadequate." (Emphasis added.) *Bearden* at 665. Indeed, the *Bearden* court concluded that the reason for nonpayment was critical:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the

State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment. *Id.* at 672-673.

{¶19} The record supports the trial court's finding that Harris willfully refused to make any effort to pay his child support obligations by seeking employment. At the time the court revoked Harris's community control sanctions, he was 39 years old, had completed three years of college, and had worked for several years as a paralegal at a prominent law firm. There was no evidence that he was ill, disabled, or otherwise unable to work. In fact, Harris acknowledged working temporary jobs and had periodic employment during the indictment periods. Yet, he only paid $10 to each victim during the three-month period between sentencing and his second revocation hearing. Harris made these payments only after having appeared before the court at the first violation hearing, where the court reiterated the requirement that he make good faith efforts to obtain full-time employment by providing five applications per week.

{¶20} Moreover, Harris failed to provide the five applications as required. He provided a total of four applications during one four-week period preceding the December revocation hearing. Although he claimed he had obtained employment three

days before the second revocation hearing, he had nothing to verify that employment except an I.D. Not only did he fail to make court-ordered restitution payments, he also failed to demonstrate bona fide efforts to acquire the resources to pay. Under these circumstances, we find no plain error.

**{¶21}** The first assignment of error is overruled.

<u>Guilty Plea</u>

**{¶22}** In his second assignment of error, Harris argues the court erred in denying his motions to vacate his guilty pleas. He contends he did not enter his plea knowingly, intelligently, and voluntarily because he did not know he could raise financial inability to pay as an affirmative defense.

**{¶23}** A post-sentence motion to withdraw a guilty plea may be granted only to correct a "manifest injustice." Crim.R. 32.1; *State v. Bell*, 8th Dist. No. 87727, 2007-Ohio-3276, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). The defendant bears the burden of establishing the existence of "manifest injustice." *Id.*, paragraph one of syllabus. "Manifest injustice" is an extremely high standard that permits the court to allow a plea withdrawal only in "extraordinary cases." *State v. Malone*, 8th Dist. No. 91439, 2009-Ohio-1364, ¶ 8. A post-sentence motion to vacate a guilty plea is also left to the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

**{¶24}** Harris claims that if he had known that financial inability to pay the child support obligation was a defense, he would not have pled guilty. He further argues that R.C. 2919.21 provides this defense. However, R.C. 2919.21(D) states:

> It is an affirmative defense to a charge of failure to provide adequate support under division (A) of this section or a charge of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide adequate support or the established support *but did provide the support that was within the accused's ability and means*. (Emphasis added.)

**{¶25}** Harris fails to recognize that the defense requires the accused to provide support within his means. Thus, Harris could only have benefitted from this defense if he had made payments commensurate with his ability and means. However, in CR-540287, the indictment period spanned October 2007 through October 2009, and Harris made no payments during this two-year period. In CR-535479, the indictment period spanned February 2008 through January 2010. Harris made only five payments in 2008, ranging from $7.14 to $164.22. According to his exhibit, attached to his motions to withdraw his guilty plea, he was employed during the indictment periods. Despite a few paltry payments, the record indicates that Harris failed to provide payments within his means and ability. As such, he could not have availed himself of the financial hardship defense, and therefore, the trial court did not abuse its discretion in denying his motions to withdraw his guilty pleas. Furthermore, the record reflects his alleged inability to pay, and the court fully considered his circumstances.

**{¶26}** The second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN JUDGMENT ONLY