# TATE *v.* SHORT

No. 324. Argued January 14, 1971—Decided March 2, 1971

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, STEWART, WHITE, MARSHALL, and BLACKMUN, JJ., joined. BLACKMUN, J., filed a concurring statement, *post*, p. 401. BLACK, J., concurred in the result. HARLAN, J., filed a statement concurring in the judgment, *post*, p. 401.

*Norman Dorsen* argued the cause for petitioner. With him on the briefs were *Peter Sanchez-Navarro, Jr.,* and *Stanley A. Bass.*

*Joseph G. Rollins* argued the cause for respondent. With him on the brief were *Crawford C. Martin,* Attorney General of Texas, *Nola White,* First Assistant Attorney General, *Alfred Walker,* Executive Assistant Attorney General, and *Robert C. Flowers* and *Gilbert J. Pena,* Assistant Attorneys General.

*Allan Ashman* filed a brief for the National Legal Aid and Defender Association as *amicus curiae* urging reversal.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner accumulated fines of $425 on nine convictions in the Corporation Court of Houston, Texas, for traffic offenses. He was unable to pay the fines because of indigency [1] and the Corporation Court, which otherwise has no jurisdiction to impose prison sentences,[2] committed him to the municipal prison farm according to the provisions of a state statute and municipal ordinance [3] which required that he remain there a suffi-

---

[1] At the habeas corpus hearing the assistant district attorney appearing for the State stipulated: "We would stipulate he is poverty stricken, and that his whole family has been for all periods of time therein, and probably always will be." Petitioner's uncontradicted testimony at the hearing was that, prior to his imprisonment, he earned between $25 and $60 a week in casual employment. He also received a monthly Veterans Administration check of $104. He has a wife and two children dependent on him for support. We were advised on oral argument that under Texas law his automobile was not subject to execution to collect the fines.

[2] Tex. Code Crim. Proc., Art. 4.14 (1966) provides:

"The corporation court in each incorporated city, town or village of this State shall have jurisdiction within the corporate limits in all criminal cases arising under the ordinances of such city, town or village, and shall have concurrent jurisdiction with any justice of the peace in any precinct in which said city, town or village is situated in all criminal cases arising under the criminal laws of this State, in which punishment is by fine only, and where the maximum of such fine may not exceed two hundred dollars, and arising within such corporate limits."

[3] Tex. Code Crim. Proc., Art. 45.53 (1966), provides in pertinent part:

"A defendant placed in jail on account of failure to pay the fine and costs can be discharged on habeas corpus by showing:

"1. That he is too poor to pay the fine and costs; and

"2. That he has remained in jail a sufficient length of time to satisfy the fine and costs, at the rate of $5 for each day."

Houston Code § 35–8 provides:

"Each person committed to the county jail or to the municipal

cient time to satisfy the fines at the rate of five dollars for each day; this required that he serve 85 days at the prison farm. After 21 days in custody, petitioner was released on bond when he applied to the County Criminal Court of Harris County for a writ of habeas corpus. He alleged that: "Because I am too poor, I am, therefore, unable to pay the accumulated fine of $425." The county court held that "legal cause has been shown for the imprisonment," and denied the application. The Court of Criminal Appeals of Texas affirmed, stating: "We overrule appellant's contention that because he is too poor to pay the fines his imprisonment is unconstitutional." 445 S. W. 2d 210 (1969). We granted certiorari, 399 U. S. 925 (1970). We reverse on the authority of our decision in *Williams* v. *Illinois,* 399 U. S. 235 (1970).

The Illinois statute involved in *Williams* authorized both a fine and imprisonment. Williams was given the maximum sentence for petty theft of one year's imprisonment and a $500 fine, plus $5 in court costs. The judgment, as permitted by the Illinois statute, provided that if, when the one-year sentence expired, Williams did not pay the fine and court costs, he was to remain in jail a sufficient length of time to satisfy the total amount at the rate of $5 per day. We held that the Illinois statute as applied to Williams worked an invidious discrimination solely because he was too poor to pay the fine, and therefore violated the Equal Protection Clause.

Although the instant case involves offenses punishable by fines only, petitioner's imprisonment for nonpay-

prison farm for non-payment of their fine arising out of his conviction of a misdemeanor in the corporation court shall receive a credit against such fine of five dollars ($5.00) for each day or fraction of a day that he has served."

ment constitutes precisely the same unconstitutional discrimination since, like Williams, petitioner was subjected to imprisonment solely because of his indigency.[4] In *Morris* v. *Schoonfield*, 399 U. S. 508, 509 (1970), four members of the Court anticipated the problem of this case and stated the view, which we now adopt, that

> "the same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full."

Our opinion in *Williams* stated the premise of this conclusion in saying that "the Equal Protection Clause of the Fourteenth Amendment requires that the statu-

---

[4] Houston Code § 35-9 provides:

"[A]dditional credit against the fine of each prisoner may be granted by the superintendent of the municipal prison farm for good conduct, industry and obedience; provided, however, that such additional credit shall not exceed in time more than one-half (½) day credit on his fine for each day's work."

An implementing regulation of the Fines Bureau Division of the Houston Corporation Court interprets this provision as follows:

"If a person appears in court and is found guilty and does not have money to pay his fine, he is committed to jail to serve the amount of the fine at the rate of $5.00 per day. In certain cases a person may be allowed $7.50 credit per day."

It does not appear that petitioner was granted the increased credit for any of the 21 days he served before his release.

tory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status." 399 U. S., at 244. Since Texas has legislated a "fines only" policy for traffic offenses, that statutory ceiling cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine. Imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant cannot pay because he is indigent and his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment.

There are, however, other alternatives to which the State may constitutionally resort to serve its concededly valid interest in enforcing payment of fines. We repeat our observation in *Williams* in that regard, 399 U. S., at 244–245 (footnotes omitted):

"The State is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction.

"It is unnecessary for us to canvass the numerous alternatives to which the State by legislative enactment—or judges within the scope of their authority—may resort in order to avoid imprisoning an indigent beyond the statutory maximum for involuntary nonpayment of a fine or court costs. Appellant has suggested several plans, some of which are

already utilized in some States, while others resemble those proposed by various studies. The State is free to choose from among the variety of solutions already proposed and, of course, it may devise new ones." [5]

We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so. Nor is our decision to be understood

---

[5] Several States have a procedure for paying fines in installments. *E. g.*, Cal. Penal Code § 1205 (1970) (misdemeanors); Del. Code Ann., Tit. 11, § 4332 (c) (Supp. 1968); Md. Ann. Code, Art. 38, § 4 (a) (2) (Supp. 1970); Mass. Gen. Laws Ann., c. 279, § 1A (1959); N. Y. Code Crim. Proc. § 470–d (1) (b) (Supp. 1970); Pa. Stat. Ann., Tit. 19, § 953 (1964); Wash. Rev. Code § 9.92.070.

This procedure has been widely endorsed as effective not only to collect the fine but also to save the expense of maintaining a prisoner and avoid the necessity of supporting his family under the state welfare program while he is confined. See, *e. g.*, Final Report of the National Commission on Reform of Federal Criminal Laws, Proposed New Federal Criminal Code § 3302 (2) (1971); American Bar Association, Project on Standards for Criminal Justice, Sentencing Alternatives and Procedures § 2.7 (b), pp. 119–122 (Approved Draft 1968); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 18 (1967); ALI, Model Penal Code § 302.1 (1) (Proposed Official Draft 1962). See also Comment, Equal Protection and the Use of Fines as Penalties for Criminal Offenses, 1966 U. Ill. L. F. 460; Note, The Equal Protection Clause and Imprisonment of the Indigent for Nonpayment of Fines, 64 Mich. L. Rev. 938 (1966); Note, Imprisonment for Nonpayment of Fines and Costs: A New Look at the Law and the Constitution, 22 Vand. L. Rev. 611 (1969); Note, Fines and Fining—An Evaluation, 101 U. Pa. L. Rev. 1013 (1953); J. Sellin, Recent Penal Legislation in Sweden 14 (1947); Cordes, Fines and Their Enforcement, 2 J. Crim. Sci. 46 (1950); S. Rubin, H. Weihofen, G. Edwards, & S. Rosenzweig, The Law of Criminal Correction 253 and n. 154 (1963); E. Sutherland & D. Cressey, Principles of Criminology 276 (6th ed. 1960). See also *Williams* v. *Illinois*, 399 U. S., at 244–245, n. 21.

as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case.

The judgment of the Court of Criminal Appeals of Texas is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE HARLAN concurs in the judgment of the Court on the basis of the considerations set forth in his opinion concurring in the result in *Williams* v. *Illinois,* 399 U. S. 235, 259 (1970).

MR. JUSTICE BLACKMUN, concurring.

The Court's opinion is couched in terms of being constitutionally protective of the indigent defendant. I merely add the observation that the reversal of this Texas judgment may well encourage state and municipal legislatures to do away with the fine and to have the jail term as the only punishment for a broad range of traffic offenses. Eliminating the fine whenever it is prescribed as alternative punishment avoids the equal protection issue that indigency occasions and leaves only possible Eighth Amendment considerations. If, as a nation, we ever reach that happy point where we are willing to set our personal convenience to one side and we are really serious about resolving the problems of traffic irresponsibility and the frightful carnage it spews upon our highways, a development of that kind may not be at all undesirable.