**Carleton FRAZIER et al., Petitioners-Appellees,**

v.

**Captain R. F. JORDAN, Superintendent of the City of Atlanta Prison Farm, Respondent-Appellant.**

**No. 71–2061.**

United States Court of Appeals, Fifth Circuit.

April 3, 1972.

Henry L. Bowden, John E. Dougherty, Atlanta, Ga., for respondent-appellant.

Richard Roesel, Larry Woods, Atlanta Legal Aid Soc., Michael Terry, Atlanta, Ga., for petitioners-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

In this habeas proceeding Frazier and other petitioners raise a single question: May a municipal court constitutionally impose a sentence requiring an indigent defendant to pay a fine forthwith or serve a specified number of days in jail? The district court granted the writ on the ground that the sentence discriminates against defendants unable to pay their fines because of their indigency. The state appeals. We affirm.

The petitioners-appellees were arrested for violations of the Atlanta Noise Ordinance[1] and the Atlanta Fire Ordinance.[2] They pleaded not guilty, but after a short trial before the Municipal Court for the City of Atlanta, General Division, each was found guilty of both violations. On March 12, 1971, each appellee received two alternative sentences of a $17 fine or 13 days in jail for each violation, the jail terms to be served consecutively, if at all. The appellees were unable to pay the fine because of their indigency, and served the first of their thirteen day terms. After exhausting state remedies, they sought and, on March 29, 1971, were granted the writ of habeas corpus in federal district court, while serving the second of the thirteen day sentences.

We approach the present case in light of a trilogy of recent Supreme Court cases dealing with imprisonment imposed upon indigent defendants for non-payment of fines. The groundbreaking case was Williams v. Illinois, 1970, 399 U.S. 235, 90 S.Ct. 2018, 26 L. Ed.2d 586. In *Williams*, an acknowledged indigent defendant received a sentence of a year in prison and a five hundred dollar fine, plus a five dollar assessment for court costs. The judgment against Williams provided that, should Williams default, he must remain in jail beyond one year to work off his debt at the rate of five dollars per day. Williams could not pay his fine and the court costs charged him, and he was ordered to remain in jail for 101 days beyond the expiration of his one year term, despite the uncontested allegation that a job awaited him outside the prison walls which would enable him to pay off his debt in installments. The Supreme Court held that Williams could not be kept in prison longer than the statutory maximum simply for failing to pay his fine and court costs immediately. The scheme violated the Equal Protection clause because "the State has visited different consequences on two categories of persons . . . . [T]he result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment." 399 U.S. at 242, 90 S. Ct. at 2023. The Court stressed that Illinois could have no penal interest in incarcerating Williams beyond the statutory maximum for failure to pay his fine at once; rather "the sovereign's purpose in confining an indigent beyond the statutory maximum is to provide a coercive means of collecting or 'working out' a fine." 399 U.S. at 243, 90 S.Ct. at 2023. But the state's interest in collecting its fines was not enough to justify the disparate treatment of indigent defendants, since there are "numerous alternatives" available to the state for effective collection of its fines.

The companion case to Williams v. Illinois was Morris v. Schoonfield, 1970, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773. In a per curiam opinion, the Supreme Court remanded the Morris case to the district court for reconsideration in light of *Williams*. Four Justices concurred specially, with Mr. Justice White expressing their view

. . . that the same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

399 U.S. at 509, 90 S.Ct. at 2233, 26 L. Ed.2d at 773–774. Last term, the Court explicitly adopted the view of the concurring Justices in Morris v. Schoonfield. Tate v. Short, 1971, 401 U.S. 395,

---

1. Atlanta Municipal Code § 20–30.

2. Atlanta Municipal Code § 12–2.

91 S.Ct. 668, 28 L.Ed.2d 130, extended *Williams* and prohibited the incarceration of an indigent unable to pay the fine which was the only punishment authorized to be imposed under Texas law. The Court held that the same unconstitutional discrimination was present in Tate v. Short that existed in Williams; "like *Williams*, petitioner was subjected to imprisonment solely because of his indigency." Again the Court explained that imprisonment served no penal purpose, for Texas had legislated a "fines only" policy for Tate's offense; Tate's imprisonment was a means of collecting fines, but was ill-suited to that purpose and ignored alternative means of accomplishing the same objective. 401 U.S. at 399, 91 S.Ct. at 671, 28 L.Ed.2d at 133–134.

The appellant argues that the case at bar is factually distinguishable from Tate v. Short, *supra*. Unlike the sentencing court in that case, he argues, the municipal courts of Atlanta have authority to levy a fine *or* imprisonment on a defendant. Here, he says, the trial judge "could have imposed a prison sentence in the first instance." Consequently, or so we understand the appellant's argument, the imprisonment visited upon the appellees is not governed by the recent Supreme Court holdings; the imprisonment imposed here is not only a collection device but also a judicial expression that the state's penal interests will be served only by immediate payment of a fine or by imprisonment.

We see no constitutional significance in the distinction asserted by the appellant. The alternative fine before us creates two disparately treated classes: those who can satisfy a fine immediately upon its levy, and those who can pay only over a period of time, if then. Those with means avoid imprisonment; the indigent cannot escape imprisonment. Since the difference in treatment is one defined by wealth, the alternative fine creates a "suspect" classification which must be tested by the compelling state interest test. *Accord*, In re Antazo, 1970, 3 Cal.3d 100, 89 Cal.Rptr. 255, 473 P.2d 999. We must therefore decide whether imprisonment of an indigent defendant who cannot immediately avail himself of the fine option in an "alternative sentence" is "necessary to promote a compelling governmental interest . . . ." Shapiro v. Thompson, 1969, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600.

There are two broad kinds of interests which default imprisonment of those given alternative sentences might serve.[3] The first is the state's interest in collecting its fine revenues. Imprisonment of those who cannot pay their fines at once, whatever the cost to the state of each individual incarceration,[4] plainly serves to coerce defendants with marginal or concealable assets to use those assets to satisfy a fine and stave off imprisonment. But far less onerous alternatives will do this job in an effective manner.[5] Williams v. Illinois, *supra*; Tate v. Short, *supra*. As a result, however compelling the state's interest in collecting its fines, imprisonment of those who do not have the assets to pay

---

3. Comment, Fines, Imprisonment, and the Poor: "Thirty Dollars or Thirty Days", 57 Cal.L.Rev. 778 (1969).

4. In Tate v. Short, *supra*, the Supreme Court reasoned that imprisonment of an indigent unable to pay his fine does not serve the State's interest in augmenting its revenues, because the defendant cannot pay and "his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment." 401 U.S. at 399, 91 S.Ct. at 671, 28 L.Ed.2d at 134. We do not base our own conclusion on this analysis because it seems to us to overlook the possibility that imprisonment of indigents who cannot pay their fines may fatten the state's pocketbook by increasing overall collection of fines from all defendants while admittedly resulting in a net deficit for each defendant actually imprisoned.

5. Comment, *supra* note 3; Note, Imprisonment for Nonpayment of Fines and Costs: A New Look at the Law and the Constitution, 22 Vand.L.Rev. 611 (1969).

immediately is not "necessary" to achieving the state's objection. *Accord* In re Antazo, *supra.* The state's financial interest, then, cannot provide constitutional justification for the practice we consider today. All this, we think, has been settled by the Supreme Court.

There remain, then, the set of state penal interests which are arguably bound up with the alternative fine and which lend this case whatever novelty it may possess. As for the state's interest in rehabilitation, we agree fully with the conclusion of the California Supreme Court that whatever lessons are impressed upon a defendant by imprisonment for failure to pay his fine at once might be equally well impressed upon him during the course of compliance with a schedule of payments established according to an alternative state procedure. In re Antazo, *supra,* 473 P.2d at 1008. Nor is imprisonment of those who cannot immediately pay a fine alternative to imprisonment necessary to promote the state's punitive and deterrent penological interests. When a municipal judge imposes an alternative sentence of fine or imprisonment, he proclaims, for the state, that its punitive and deterrent interests can be served by requiring the defendant to pay a fine— just as the state so indicates when by statute it establishes a "fines only" penalty and by statute provides the collection device of imprisonment for inability to pay the fine at once. Tate v. Short, *supra.* There is a particularized determination of the state's penal interests in the one case, and a general legislative determination in the other, but the determination itself, is the same: that the state's penal needs can be met through payment of a fine.

The appellants' response, as we see it, is that the alternative sentence should be interpreted as an expression by the imposing judge that the state's deterrent and punitive interests can be fulfilled only through either immediate payment of the fine or through imprisonment. Alternative methods of fine collection

are implicitly declared too "soft" to match the rigors of immediate payment, and, as a result, the jail sentence must be imposed to deter future offenders and punish the defendant who cannot produce funds to pay his fine on the spot. Or so the argument might run.

Yet we refuse to accept the foundation on which this house of cards is built: that the immediate payment of fines serves punitive and deterrent interests not adequately protected through alternative methods of fine collection, such as the installment plan. In his concurring opinion in Williams v. Illinois, *supra,* Mr. Justice Harlan adverted to this problem when he observed that it is

. . . a highly doubtful proposition [that deterrence is effective only when a fine is exacted at once after sentence and by lump sum, rather than over a term] . . . . [A]part from the mere fact of conviction and the humiliation associated with it and the token of punishment evidenced by the forfeiture, the deterrent effect of a fine is apt to derive more from its pinch on the purse than the time of payment.

399 U.S. at 264–265, 90 S.Ct. at 2034. We agree. Alternative devices for the payment of fines may be structured to require the *defendant who pays his fine* over a period of time to pay a sum whose discounted value equals the initial amount of the fine; it is not constitutionally mandated, and would likely be impermissible, see Williams v. Illinois, *supra,* 399 U.S. at 244, 90 S.Ct. 2018, 26 L.Ed.2d 586, for the state to collect over time from indigents an amount whose present value would be less than that of the fine imposed on non-indigents. Given this means of equalizing the financial detriment imposed over time with that required through immediate payment, there remains only the special punitive or deterrent effect which might flow from the popular and subjective belief that, somehow, it hurts more to pay out

a lump sum today than to string out payments of a larger amount over a series of months. In light of an appropriately calculated interest rate for time payments, this irrational sentiment cannot provide a basis for sustaining the alternative jail sentence as a substitute for the "unique" punishment inherent in immediate payment of a fine. We hold that the penal and deterrent effect of the immediate fine may be achieved through the alternative device of installment payments appropriately calculated, and perhaps through other measures which the states, in their wisdom, may devise. Imprisonment of those who cannot pay their fines immediately is not necessary to promote the state's compelling interests in effective punishment and deterrence of crime.

We repeat a familiar litany: "our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so. Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case." Tate v. Short, 401 U.S. at 400–401, 91 S.Ct. at 672, 28 L.Ed.2d at 134–135.

Finally, we note that the sole question before us is the correctness of the district court's holding that the appellees were unlawfully confined. We agree that the detention imposed according to the alternative sentence was unlawful. Our holding should not be read, though, to discharge or relieve the appellees from the responsibility for satisfying the fines levied against them in such fashion as the authorities may deem appropriate in light of his opinion.

Affirmed.

COLEMAN, Circuit Judge (dissenting):

I acknowledge the duty of following the decisions of the Supreme Court. Of course, those of the Supreme Court of California are not binding on this Court.

The United States Supreme Court has not yet passed on the situation now before us. I would not go beyond what that Court has already decided. Indeed, in this particular field I would hope, with deference, that some prior decisions may yet be reconsidered.

I gather that the practical effect of the instant decision, to which I now dissent, is to establish as a rule of Constitutional law:

"Persons who have funds may be imprisoned until they pay their fines; those without funds may not be so imprisoned, even if the law prescribed an alternative penalty."

Those with funds are thus denied equal treatment under the law. I would suppose that it is as much a denial of equal protection to discriminate against a person because he has money as it would be to discriminate against one who is poor. I remember the terms of the judicial oath to "do equal right to the poor and to the rich", 28 U.S.C., § 453.

As a practical matter, collecting fines on the installment plan is a delusion. Ask any experienced installment collector.

My basic objection to this decision is that once again the courts, the instrumentalities of the law, deliver another solar plexus to law enforcement. No indigent can be convicted of the usual misdemeanor unless it be shown beyond a reasonable doubt that he voluntarily (wilfully) committed it. That being so, I do not read the Constitution to require that any person, I care not who he is, must be given a license to violate the law on the installment plan.

Even if it were reasonably possible to keep up with the whereabouts and pecuniary status of a misdemeanant, he can never be penalized if he chooses to stay clear of the money needed to pay his fine. Thus it turns out, after all, that there is no equal justice under the law. One man is required to pay his fine; another is not.

Suppose one acquires the funds but then refuses or neglects to pay. He has the money in the morning but he spends it before night. He is still an indigent. May he then be put in jail for non-payment? If so, upon what kind of procedure?

It is useless to say that the remedy is to prescribe jail sentences for all misdemeanors. Convictions would be almost impossible of attainment under such harsh conditions. Moreover, there are not enough jails to hold them all if they were convicted. In the natural course of current events, I expect soon to see the claim that imprisonment for petty misdemeanors is cruel and unusual punishment. I wonder what the decision will be when that case arises. Would it be cruel and unusual to put a mother in jail for twenty-four hours for running a stop sign or driving at 80 in a 60 mile zone? That would be as reasonable as some other decisions which have been rendered in this area by some courts.

The convicted misdemeanants now before us knew, or were charged with knowing, when they committed the offenses of which they were convicted that the law permitted either fine or imprisonment. That did not deter them. They should be required to keep their voluntary bargain. For them it is a good thing that I do not have the sole power to decide their case. I would unhesitatingly require them to pay the fine or serve the time.

I respectfully dissent.