*319 MR. JUSTICE SHEA
dissenting:
I would reverse the summary judgment and send the case back for trial. There are genuine factual issues involved which must be tried by a jury. This case, contrary to the conclusion of the majority, is controlled by the “special circumstances” which created a higher duty of care than merely that of an ordinary jailer. The City was openly and avowedly running its jail as a de facto detoxification center, and that is the focal point from which we must measure duty, foreseeability, and efficient intervening cause.
The nature of the duty owed to the deceased depends, of course, on the nature of his incarceration. Here the purported legal reason why the city judge ordered the deceased to jail is because he had violated the open container law and could not pay the fine imposed. Consequently, he was ordered to work off the $100 fine in jail, with credit allowed at a rate of $10 per day. The actual reason, however, for the deceased’s incarceration was that he was a chronic abuser of alcohol and in the wisdom of the City, he needed detoxification. As the majority has recognized, the deceased was no stranger to the City jail, having been there many, many times before for primary alcohol-related offenses. The majority expressed the true nature of the City jail in the following manner:
“The Hardin City fail is used almost entirely for detoxification. Of the 300 persons incarcerated in the jail for a twelve month period immediately preceding September 1973, 98 percent were jailed on alcohol-use offenses. Of these offenders, 95 percent of those jailed were Native Americans . . .” (Emphasis added.)
Based on these disclosures, I do not understand why the majority refuses to attach special significance to these facts in analyzing the duty which the City owed to the deceased.
By imposing the $100 fine which the deceased was unable to pay, and then requiring the deceased to pay off the fine at the rate of $ 10 per day for each day spent in the jail, the City starts off with a strike against it. The record before this Court indicates that the deceased was ordered to spend time in jail solely because he did not have the $ 100 with which to pay the fine. Almost two years before *320 this incident, the United States Supreme Court squarely condemned this practice as a violation of equal protection of the law. Tate v. Short (1971), 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130. Therefore, from the very moment he was sentenced, the deceased was being held illegally.
It appears however, that the actual reason for placing the deceased in jail was that the City in its wisdom, determined that he needed detoxification due to his chronic abuse of alcohol. As the majority has noted, for at least a year immediately preceding the deceased’s suicide, the City was using the jail almost exclusively as a detoxification center. This is a far cry from the normal uses to which a City jail is put, and it is for this reason that the normal duty owed by the jailer to the inmates of the jail does not apply. When the City changed the general nature of the use of the jail, it also changed the nature of its duties owed to the occupants of the jail.
The deceased was in essence being treated (however ineptly) as one of many persons with a chronic alcohol abuse problem. It is therefore of no consequence that the City did not know of the deceased’s particular propensities to attempt suicide. The City is charged with the general knowledge that chronic alcohol abusers do not act like ordinary prisoners, particularly when they are involuntarily committed. The process of detoxification is a painful physical and mental process. One going through this process may develop extreme psychosis, delirium tremens, and is certainly more likely to attempt suicide than the prisoner without this problem. The City is charged with this knowledge because it openly and avowedly ran the jail as a detoxification center. It was not therefore required that the City have specific knowledge that the deceased was a potential candidate for suicide.
Given this general duty imposed upon the City, it is a foreseeable event that a prisoner held as a chronic abuser of alcohol may attempt suicide. It was the duty of the City to take appropriate preventative steps, not simply to prevent the deceased from attempting or committing suicide, but to prevent all occupants from attempt *321 ing or committing suicide. Absent these preventative measures, the City could not prevent an inmate from either harming another or harming himself. The facts here indicate the City did absolutely nothing to prevent the occupants from harming others or from harming themselves. The City took no steps to determine if weapons or other dangerous instruments were coming into the jail. This is hardly the way to run a detoxification center.
The majority opinion recited the essential facts concerning the lack of jail inspection. Anyone could have slipped a weapon to the occupants of the jail. It is not at all unreasonable to conclude that a weapon finding its way into a jail is either for the purpose of effectuating an escape, harming another, or harming oneself. That a chronic alcoholic may attempt suicide while involuntarily jailed, is a clearly foreseeable event.
I do not think the status of the trustie who knew the deceased had the knife can be ignored. This knowledge, under the facts of this case, is also chargeable to the City, The trustie knew the deceased had the knife but failed to notify anyone of this potentially dangerous situation. The trustie received a $5.00 credit each day for performing the duties of janitorial work and reporting anything unusual to the officer on duty. If it is not unusual for a jail inmate to have an unauthorized knife, I do not know what is. The trustie, working for the City, became the de facto agent of the City, and his knowledge was properly chargeable to the City. The trustie should have foreseen that the deceased planned to either harm someone else or himself. The aid of the trustie having been enlisted and having granted him special privileges in exchange for this aid, the City cannot now disavow that he was its agent. I stress, however, that even if the trustie did not know the deceased had possession of the knife, an attempted suicide by one undergoing involuntary detoxification, was a foreseeable event.
We next get to the question of whether the deceased was responsible for his own act of suicide, thereby exonerating the City. If we accept the proposition that the City owed deceased a duty under the “special circumstances” rule and further accept that the *322 deceased’s suicide was foreseeable while confined in a detoxification center, then it would be ludicrous to hold that the City was exonerated simply because the deceased’s intentional act intervened. At the very least, it is a question of fact as to whether the deceased was in sufficient control of his mind and faculties such as to absolve the City of any responsibility for his ultimate suicide.
For the foregoing reasons, I would reverse the District Court and hold that summary judgment was improperly granted.