**Marion L. HUTCHINSON, Plaintiff,**

v.

**Eli JONES, Warden, Stone Mountain Correctional Institute, DeKalb County, Georgia.**

No. C78–311A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 10, 1979.

James C. Bonner, Jr., Athens, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Robert S. Stubbs, II, Executive Asst. Atty. Gen., Richard L. Chambers, First Asst. Atty. Gen., Daryl A. Robinson, Staff Asst. Atty. Gen., Atlanta, Ga., for defendant.

### ORDER OF COURT

MOYE, District Judge.

This habeas corpus case is before the Court for review of the report and recommendation of the United States Magistrate.

Petitioner's claim arises out of his sentence in the State Court of DeKalb County following acceptance of his plea of guilty to charges of issuing worthless checks. His four concurrent 1-year sentences and one 1-year consecutive sentence were all to be probated upon petitioner's payment of restitution of $1,587.90. Petitioner was denied the opportunity to pay the restitution in

installments and was incarcerated. He contends that his incarceration results from financial inability to pay immediately the restitution and deprives him of equal protection of the laws.

The magistrate granted petitioner relief unless within 30 days petitioner's sentences are reformed to afford him a fair opportunity to raise the money to make restitution or petitioner is given an opportunity to replead. The Court hereby approves the report and recommendation and adopts it as the order of this Court.

Petitioner relies on *Barnett v. Hopper*, 548 F.2d 550 (5th Cir. 1977), *vacated as moot*, 439 U.S. 1041, 99 S.Ct. 714, 58 L.Ed.2d 701 (1978), wherein the fifth circuit granted habeas corpus relief on virtually identical facts as these. Respondent, on the other hand, relies on *Hunter v. Dean*, 240 Ga. 214, 239 S.E.2d 791 (1977), *cert. dismissed*, 439 U.S. 281, 99 S.Ct. 712, 58 L.Ed.2d 520 (1978), wherein the Georgia Supreme Court reached a conclusion opposite that reached in *Barnett*. Because neither *Barnett* nor *Hunter* is binding upon this Court, the Court has engaged in an independent attempt to ascertain the proper rule of law.

The Supreme Court has dealt at length with issues closely related to the one involved here on two occasions. In *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), an indigent was given the statutory maximum sentence of one year imprisonment and a $500 fine. Upon failure to pay the fine, the appellant in *Williams* was kept in prison to "work off" his sentence at the rate of $5 per day. Chief Justice Burger recognized the traditional use of imprisonment to collect fines but also noted the Court's efforts "to alleviate discrimination against those who are unable to meet the costs of litigation in the administration of criminal justice." *Id.* at 239–41, 90 S.Ct. at 2022, citing *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); *Griffin v.*

*Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). He then concluded that

> [O]nce the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency.

*Id.* 399 U.S. at 241–42, 90 S.Ct. at 2022. The Chief Justice then added a very significant qualification to his opinion:

> The mere fact that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same offense does not, of course, give rise to a violation of the Equal Protection Clause. Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences.

399 U.S. at 243, 90 S.Ct. at 2023.

This qualification was explained somewhat in *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). There an indigent defendant was fined by a court having no jurisdiction to imprison. The Court held that the subsequent imprisonment of the indigent for failure to pay the fine was unconstitutional, reasoning that since the state had legislatively adopted a "fines only" policy, the Equal Protection Clause of the Fourteenth Amendment would forbid conversion of an indigent's sentence to a fine into a prison term. *Id.* at 399, 91 S.Ct. 668.

Justice Brennan reasoned further that imprisonment in such a case does nothing to further any penal objective of the state and that the only effect imprisonment of an indigent could have on the state's revenue is the dampening effect of causing the state to pay for the defendant's food and housing. *Id.* The Court explicitly recognized the widespread use of installment payment

procedures as an alternative available to the states to enable them to collect fines from indigents. *Id.* at 400, 91 S.Ct. 668.

A slight expansion of *Williams* and *Tate* was undertaken by the fifth circuit in *Frazier v. Jordan*, 457 F.2d 726 (5th Cir. 1972). The facts of *Frazier* differed from those in *Tate* only in that the sentencing court had jurisdiction to imprison *or* fine, and sentenced the defendant to $34 fine or 26 days in jail. *Id.* at 728. The state emphasized this distinction, arguing that the alternative sentence was an expression by the sentencing court that the state's penal interest could be served in *either* of two ways—by fine *or* imprisonment. Judge Wisdom rejected the argument as follows:

> The alternative fine before us creates two disparately treated classes: those who can satisfy a fine immediately upon its levy, and those who can pay only over a period of time, if then. Those with means avoid imprisonment; the indigent cannot escape imprisonment.

457 F.2d at 728. Judge Wisdom reasoned that any revenue purpose of the state served by default imprisonment could be accomplished through "less onerous alternatives." Similarly, he felt that any penal interest served by default imprisonment for failure to pay a fine at once could just as well be accomplished by requiring the defendant to pay the fine in installments. He saw no added punitive or deterrent effect in requiring the "up-front" payment of the entire fine.

With these background cases in mind, the Court may turn to the precise issue presently before it: Whether a state sentencing court may condition probation of a prison term upon the *immediate* payment of restitution. As indicated above, the fifth circuit and the Georgia Supreme Court have disagreed over the answer to the issue.[1] In *Barnett v. Hopper*, 548 F.2d 550, the court noted the distinction between this issue and

the issues faced in *Williams, Tate,* and *Frazier.* Judge Clark acknowledged that wealth may no longer be deemed a suspect classification for the purposes of equal protection analysis, citing *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), but concluded that to imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws.[2] *Id.* at 553–54.

The fifth circuit's analysis was rejected by a unanimous court in *Hunter v. Dean*, 240 Ga. 214, 239 S.E.2d 791 (1977), *cert. dismissed*, 439 U.S. 281, 99 S.Ct. 712, 58 L.Ed.2d 520 (1978). The basis of the Supreme Court's disagreement was the notion that prepayment of a fine would give a probationer a greater interest in carrying out the terms of his probation than would the payment of a fine through installments. This factor, according to *Hunter*, establishes a valid state penological interest in the prepayment of a fine because it assures a successful probation. *Id.* at 218–20, 239 S.E.2d 791. With all due respect for the Georgia Supreme Court, this Court cannot accept this reasoning. The *Hunter* court failed to explain how prepayment of a fine better assures a successful probation than payment by installments. The argument seems to be that upon revocation of probation only that part of a fine already paid will be lost. There was no evidence mentioned by the *Hunter* court that under this procedure one who has prepaid a fine would be a better probation risk than one who had not prepaid, and there likewise is no such evidence in this case. Indeed, applying the rationale employed by Judge Wisdom in *Frazier*, it appears that many other factors may be analyzed by a sentencing court to determine whether a particular defendant is a good probation risk. The sentencing

---

1. The parties have not attempted to distinguish those cases on the grounds that they involve prepayment of *fines* rather than *restitution.* This Court has recognized one significant distinction. See 53, *infra.*

2. The plurality opinion in *Rodriguez* makes it questionable whether wealth may still be considered a "suspect class," but it distinguished such prior wealth classification cases as *Tate, Rodriguez, supra* 411 U.S. at 21–22, 93 S.Ct. 1278.

court thus need not rely on such a factor as prepayment of a fine in order to ascertain whether a defendant is worthy of probation. In addition, it must be recalled that while *Hunter* and *Barnett* dealt with prepayment of fines, this case involves prepayment of restitution. The state's interest in having defendants make restitution to victims will more likely be vindicated if a defendant pays in installments than if he goes to prison.

It is for the foregoing reasons that the Court adopts the magistrate's report and recommendation.