# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-KA-00998-SCT

*MARY ANN MOODY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/25/93 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS GENE CLARK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 6/11/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/2/98 |

### EN BANC.

### BANKS, JUSTICE, FOR THE COURT:

¶1. Here we consider the question of whether a standard practice of extracting a set fine from persons accused of writing bad checks on the pain of suffering a full criminal prosecution for failure to do so comports with the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. We answer that it does not. Accordingly we reverse and remand the judgment of the trial court.

### I.

¶2. On February 24, 1993, Mary Ann Moody was indicted by a Jones County Grand Jury, for the crime of False Pretense. On August 25, 1993, a jury found Moody guilty. Moody was sentenced to three years in the Mississippi Department of Corrections and fined $1,000, which was ordered one year suspended and $500 suspended. On August 26, 1993, the trial court denied Moody's motion for judgment notwithstanding the verdict, or in the alternative a new trial.

### II.

¶3. On or about October 12, 1991, Mary Ann Moody wrote a check to the order of City Salvage for $123.89. The check was written in exchange for two doors for Moody's mother's house. The check was returned to City Salvage for "non-sufficient funds." On February 24, 1993, she was indicted by a Jones County Grand Jury, for the crime of False Pretense. Moody was appointed counsel as an indigent defendant. After indictment the District Attorney's office assessed a levy of $500 plus restitution. Moody was given the option of paying a $500 fine plus restitution and having the case nolle prossed, or not paying the fine and being subjected to prosecution. Jeanne Jefcoat of the district attorney's office testified that this fine is imposed automatically once a defendant is indicted. Jefcoat testified that this was the practice after these cases were tried in circuit court instead of justice court. Moody testified that she could not pay all the fine, restitution and other costs at one time. Moody's motion to dismiss the action was denied and the case proceeded to trial. The State presented sufficient evidence to establish grounds for a conviction. She was subsequently convicted of the crime of false pretense and appeals, raising a violation of the Fourteenth Amendment to the Constitution of the United States as her sole ground on appeal.

## III.

¶4. Moody claims that the district attorney's office lacks statutory or constitutional authority to automatically impose a set fine of $500 on all defendants indicted under the Mississippi Bad Check Law. Furthermore, she claims that such a fine violates an indigent's right to equal protection under the Fourteenth Amendment. The State argues that the fine is merely a plea bargain, and as such is in the discretion of the district attorney. This is a case of first impression before this Court. We are unable to find any cases directly on point in any other jurisdiction. There is an abundance of case law dealing with indigents' equal protection arguments based on sentencing and probation revocation for failure to pay a fine. There is also case law dealing with a prosecutor's discretion in plea bargaining.

¶5. In *Bearden v. Georgia*, 461 U.S. 660, (1983), the United States Supreme Court considered whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution. The *Bearden* Court stated:

> This Court has long been sensitive to the treatment of indigents in our criminal justice system. Over a quarter-century ago, Justice Black declared that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has."

*Bearden*, 461 U.S. at 664 (quoting *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) (plurality opinion)). The Court held that before revocation of an indigent's probation, the court must inquire into the reasons for failure to pay. *Id.* at 666-67. In holding such, the Court opined:

> If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental

fairness required by the Fourteenth Amendment.

*Bearden*, 461 U.S. at 672-73; *See also* *Tate v. Short*, 401 U.S. 395 (1971) (holding that a State cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full).

¶6. Moody cites *Cassibry v. State*, 453 So. 2d 1298 (Miss. 1984), where this Court held that an indigent may not be incarcerated because he is financially unable to comply with an otherwise lawfully imposed sentence of a fine. *Cassibry* is distinguishable in that, the defendant had failed to pay a fine and was subsequently imprisoned for failure to pay the fine while in this case, Moody was sentenced to an appropriate statutory prison term for her crime. *But see Lee v. State,* 457 So. 2d 920 (Miss. 1984) (stating *Cassibry* requires consideration of statutory alternatives to imprisonment for indigents financially unable to pay a fine).

¶7. In *Barnett v. Hopper*, 548 F.2d 550 (5th Cir. 1977), *vacated as moot,* 439 U.S. 1041 (1978), the Fifth Circuit considered whether a habeas corpus petitioner had waived a constitutional attack to immediate payment of a bargained-for fine. In agreeing with the petitioner, the *Barnett* Court stated that:

> When a defendant is imprisoned for financial inability to pay a fine immediately, he is treated more severely than a person capable of paying a fine immediately. The sole distinction is one of wealth, and therefore the procedure is invalid. *Frazier v. Jordan*, 457 F.2d 726 (5th Cir. 1972). Though *Frazier* was based on the proposition that wealth is a "suspect classification" and such a conclusion has since been drawn into question by such authority as *San Antonio Indep. School Dist. v. Rodriquez*, 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed. 2d 16 (1973) (plurality opinion of four justices), the basic principles remain sound. To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws.

*Barnett*, 548 F.2d at 553-54.

¶8. In a case similar to this one, the Oklahoma Criminal Court of Appeals, considered whether a defendant was deprived of equal protection in plea bargaining. *Gray v. State*, 650 P.2d 880 (Okla. Crim. App. 1982). In *Gray* the defendant claimed that he was denied an opportunity to plea bargain because he was unable to contribute to a special community relations fund. The *Gray* court opined:

> The recognition of plea bargaining as an essential component of the administration of justice, however, does not elevate it to a constitutional right. That is not to say, that a prosecutor can accept or refuse plea negotiations in a way that discriminates against defendants on account of their race, religion, economic status or other arbitrary classification.

*Id*. at 883. The court found that there was no violation of the defendant's equal protection rights, because he did not attempt to seek a plea bargain. *Id.*

¶9. The State argues that Moody is confusing this fine with a plea bargain. There is no constitutional right to a plea bargain. *Allman v. State,* 571 So. 2d 244, 254 (Miss. 1990). The State argues that since there is no constitutional right to a plea bargain there can be no violation in this case.

Furthermore, the State claims that since the fine or plea offer is offered to everyone who is indicted, there can be no equal protection violation, because it is treating everyone the same.

¶10. The record clearly indicates that after a defendant is indicted under the Bad Check law, an automatic $500 plus restitution is charged to drop the prosecution. The amount is due immediately. The defendant then has the option of paying the $500 and have the indictment nolle prossed or proceeding to trial. Thus, one who is unable to pay will always be in a position of facing a felony conviction and jail time, while those with adequate resources will not. The automatic nature of the fine is what makes it discriminating to the poor, in that only the poor will face jail time. We hold that an indigent's equal protection rights are violated when all potential defendants are offered one way to avoid prosecution and that one way is to pay a fine, and there is no determination as to an individual's ability to pay such a fine. Subjecting one to a jail term merely because he cannot afford to pay a fine, due to no fault of his own, is unconstitutional. *See **Bearden**, 462 U.S. 672-73.*

¶11. Additionally, we note that this procedure does not involve a plea bargain at all because the only charge is nolle prosequi. There is no plea at all. What and all that happens is that a $500 fee is extracted in order to avoid prosecution. Thus the scheme is both procedurally and constitutionally flawed.

¶12. Turning now to the remedy, we conclude that the only way to put Moody on a footing roughly equivalent to those able to purchase a nolle prosequi is to remand for new sentencing in which the trial court can withhold adjudication and place her on probation requiring restitution plus reasonable efforts to pay a reasonable fine and costs. *See* Miss. Code Ann. § 99-15-26 (Supp. 1997). *See also **Bearden**,* U.S. at 674; ***Barnett,*** 548 F.2d at 553. This remedy does not restrict the trial judges where one complains of indigency. There are methods in use today which allow for indigent status where the penalty to be imposed is a fine. These include working out a payment schedule which is appropriate to the means of the offender. It is a proper solution for this case, granting Moody relief from an improper and unconstitutional practice subjecting her to disparate treatment based upon her indigency. In the future, it is to be hoped that this unconstitutional scheme will be abandoned and the matter of plea bargains will be handled in a proper manner which comports with the right to equal protection of the laws.

## IV.

¶13. For the foregoing reasons, this matter is reversed and remanded to the circuit court for re-sentencing.

¶14. **REVERSED AND REMANDED FOR RE-SENTENCING.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. WALLER, J., NOT PARTICIPATING.**


**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶15. The Jones County District Attorney's approach to enforcing the Mississippi Worthless Check Law by charging a fine to avoid prosecution and incarcerating those who cannot pay discriminates against the poor in violation of the equal protection provisions of the United States Constitution and the Mississippi Constitution and offends the prohibition against imprisonment for civil debt found in art. 3, § 30 of the Mississippi Constitution. It further allows the District Attorney's office to exercise powers well in excess of those afforded it by statute pursuant to the directive of art. 6, § 174 of the Mississippi Constitution. The root of the problem, however, lies in our statutory framework that subjects one who "bounces" a check to criminal penalties. To remand Mrs. Moody's case for resentencing and merely "hope" that the practices used in her situation will be abandoned does nothing to remedy the larger problem.

¶16. Miss. Code Ann. § 97-19-67 (1)(d)(1994) sets the penalty for writing a bad check in excess of $100, regardless of whether a first or second offense, *upon conviction*, at a fine of not less than $100 and not more than $1000, *or* imprisonment for not more than three years *or* both, *in the discretion of the court.* Jeannene Jefcoat, the Worthless Check Director for the Jones County District Attorney's Office, however, testified that once an individual has been indicted by the grand jury for writing a bad check, he must immediately pay a set $500 fine, the amount of the check and a variety of fees, or else face trial. She stated that Mrs. Moody was told that to avoid prosecution, she would have to pay more than $800: the $123.89 check, the $500 fine, $163.50 court costs, a $40 processing fee levied by the District Attorney's Office and a $10 returned check fee. Thus, Mrs. Moody was fined before she was convicted and in essence, promised that if she paid the fine and costs, she wouldn't be convicted. Contrary to the State's argument, this cannot be construed as a "standard" plea bargain in any sense merely because Mrs. Moody was offered the opportunity to pay. The fact remains that the circuit court made a finding that she was, indeed, indigent. Unable to raise the necessary funds to pay the fine and accompanying costs, however, Mrs. Moody was convicted of a felony and sentenced to jail.[(1)]

¶17. In *Frazier v. Jordan*, 457 F.2d 726 (5th Cir. 1972), the Fifth Circuit found unconstitutional the imposition of a sentence which required indigent defendants either to immediately pay a fine or serve a jail term. In so ruling, that Court relied on a trilogy of United States Supreme Court cases, wherein the imposition of a prison sentence upon an indigent defendant with no funds available to pay a fine was found to violate the equal protection clause of the Constitution because it resulted in different consequences for different classes of people. *Frazier,* 457 F.2d at 727-728 (citing *Williams v. Illinois,* 399 U.S. 235 (1970)(state's interest in collecting fines did not justify disparate treatment of indigents because "numerous alternatives" available)); *Morris v. Schoonfield,* 399 U.S. 508, 509 (1970)(White, J., concurring)("the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full"); *Tate v. Short*, 401 U.S. 395 (1971)(imprisonment was a punishment ill-suited to the purpose of collecting fines and ignored alternate means of achieving same objective). In each of these cases, fines were imposed *upon* conviction, making even more egregious the equal protection violation in Mrs. Moody's case.

¶18. The Fifth Circuit reached a more appropriately remedial holding in *Frazier,* stating that:

> . . . the penal and deterrent effect of the immediate fine may be achieved through the alternative device of installment payments appropriately calculated, and perhaps through other measures

which the states, in their wisdom, may devise. Imprisonment of those who cannot pay their fines immediately is not necessary to promote the state's compelling interests in effective punishment and deterrence of crime.

*Id.* at 729. Imprisonment may be an appropriate remedy for a defendant who refuses or neglects to pay a fine he can afford, or even when collection is unsuccessful despite the defendant's reasonable efforts to make payment. *See Frazier,* 457 F.2d at 730. However, the imprisonment of an indigent defendant who cannot pay a fine imposed to avoid conviction is a violation of the fourteenth amendment to the United States Constitution as well as to art. 3, § 30 of the Mississippi Constitution.

¶19. The statutory fee system for compensating justice court judges was found unconstitutional in *Brown v. Vance*, 637 F.2d 272 (5th Cir. 1981). "Every accused person and every civil litigant is entitled to a trial in a system that is not only fair on its face but in practical operation is free of temptation to the trial judge . . ." *Brown*, 637 F.2d at 276. The opinion particularly addressed the bonanza that collection of bad checks provided both to justices of the peace and businesses. *Id.* at 284-285. Indeed, in the following years, several justice court judges were sanctioned by this Court for using criminal process or the threat thereof to collect civil debts. *In re Odom*, 444 So. 2d 835 (Miss. 1984); *In re Lambert,* 421 So. 2d 1023 (Miss. 1982); *In re Branan,* 419 So. 2d 145 (Miss. 1982). Allowing the District Attorney, the county's chief law enforcement officer, to process civil debt as a criminal proceeding flies in the face of our constitution and is as egregious as the system it was intended to replace. As the Fifth Circuit pointed out in *Brown,* "[i]n considering the Mississippi fee system the relevant constitutional fact is that a judge's bread and butter depend on the number of cases filed in his court." *Brown*, 637 F.2d at 276. Likewise, when the District Attorney's bread and butter depends upon, or is enriched by, the fees collected in bad check cases[2], the special interests arising therefrom cannot be ignored.

¶20. Debtor's prison was abolished long ago. Our statutory system, nevertheless, allows for imprisonment of one who cannot pay all of the fines that may arise from "bouncing" a check. Further, while they may pursue actions for false pretenses, District Attorneys do not have the authority under our State Constitution or Miss. Code Ann. § 25-31-1, et seq. either to collect civil debts or to use criminal statutes to coerce payment of those debts and any fees and penalties which also might accrue. Moreover, the power to render fines and judgments belongs with the courts and not the District Attorney's Office. Miss. Code Ann. § 9-7-91. Accordingly, I do not think that the majority has gone far enough by recognizing only the fourteenth amendment problems or "hoping" that problematic debt collection practices are abandoned.

**MILLS, J., JOINS THIS OPINION.**

1. All at a cost to taxpayers well in excess of any social benefit derived from her prosecution and prison sentence. As the United States Supreme Court noted in *Tate v. Short*, 401 U.S. 395 (1971), imprisonment of a defendant unable to pay his fine does not serve the state's purpose in collecting revenues because "his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment." 401 U.S. at 399.

2. Pursuant to Miss. Code Ann. § 97-19-75(4)(1994), a district attorney can collect a $40.00 service charge from individuals accused of writing worthless checks who surrender themselves within ten days of receiving notice of a complaint. This procedure amounts to some district attorneys receiving hundreds of thousands of dollars per year for their offices.