¶ 15. The Jones County District Attorney's approach to enforcing the Mississippi Worthless Check Law by charging a fine to avoid prosecution and incarcerating those who cannot pay discriminates against the poor in violation of the equal protection provisions of the United States Constitution and the Mississippi Constitution and offends the prohibition *Page 566 
against imprisonment for civil debt found in art. 3, § 30 of the Mississippi Constitution. It further allows the District Attorney's office to exercise powers well in excess of those afforded it by statute pursuant to the directive of art. 6, § 174 of the Mississippi Constitution. The root of the problem, however, lies in our statutory framework that subjects one who "bounces" a check to criminal penalties. To remand Mrs. Moody's case for resentencing and merely "hope" that the practices used in her situation will be abandoned does nothing to remedy the larger problem.
¶ 16. Miss. Code Ann. § 97-19-67(1)(d)(1994) sets the penalty for writing a bad check in excess of $100, regardless of whether a first or second offense, upon conviction, at a fine of not less than $100 and not more than $1000, or imprisonment for not more than three years or both, in the discretion of thecourt. Jeannene Jefcoat, the Worthless Check Director for the Jones County District Attorney's Office, however, testified that once an individual has been indicted by the grand jury for writing a bad check, he must immediately pay a set $500 fine, the amount of the check and a variety of fees, or else face trial. She stated that Mrs. Moody was told that to avoid prosecution, she would have to pay more than $800: the $123.89 check, the $500 fine, $163.50 court costs, a $40 processing fee levied by the District Attorney's Office and a $10 returned check fee. Thus, Mrs. Moody was fined before she was convicted and in essence, promised that if she paid the fine and costs, she wouldn't be convicted. Contrary to the State's argument, this cannot be construed as a "standard" plea bargain in any sense merely because Mrs. Moody was offered the opportunity to pay. The fact remains that the circuit court made a finding that she was, indeed, indigent. Unable to raise the necessary funds to pay the fine and accompanying costs, however, Mrs. Moody was convicted of a felony and sentenced to jail.[1]
¶ 17. In Frazier v. Jordan, 457 F.2d 726 (5th Cir. 1972), the Fifth Circuit found unconstitutional the imposition of a sentence which required indigent defendants either to immediately pay a fine or serve a jail term. In so ruling, that Court relied on a trilogy of United States Supreme Court cases, wherein the imposition of a prison sentence upon an indigent defendant with no funds available to pay a fine was found to violate the equal protection clause of the Constitution because it resulted in different consequences for different classes of people.Frazier, 457 F.2d at 727-728 (citing Williams v. Illinois,399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970)(state's interest in collecting fines did not justify disparate treatment of indigents because "numerous alternatives" available)); Morrisv. Schoonfield, 399 U.S. 508, 509, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970)(White, J., concurring)("the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full"); Tate v.Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971)(imprisonment was a punishment ill-suited to the purpose of collecting fines and ignored alternate means of achieving same objective). In each of these cases, fines were imposed upon
conviction, making even more egregious the equal protection violation in Mrs. Moody's case.
¶ 18. The Fifth Circuit reached a more appropriately remedial holding in Frazier, stating that:
. . . the penal and deterrent effect of the immediate fine may be achieved through the alternative device of installment payments appropriately calculated, and perhaps through other measures which the states, in their wisdom, may devise. Imprisonment of those who cannot pay their fines immediately is not necessary to promote the state's compelling interests in effective punishment and deterrence of crime. *Page 567 
Id. at 729. Imprisonment may be an appropriate remedy for a defendant who refuses or neglects to pay a fine he can afford, or even when collection is unsuccessful despite the defendant's reasonable efforts to make payment. See Frazier, 457 F.2d at 730. However, the imprisonment of an indigent defendant who cannot pay a fine imposed to avoid conviction is a violation of the fourteenth amendment to the United States Constitution as well as to art. 3, § 30 of the Mississippi Constitution.
¶ 19. The statutory fee system for compensating justice court judges was found unconstitutional in Brown v. Vance,637 F.2d 272 (5th Cir. 1981). "Every accused person and every civil litigant is entitled to a trial in a system that is not only fair on its face but in practical operation is free of temptation to the trial judge . . ." Brown, 637 F.2d at 276. The opinion particularly addressed the bonanza that collection of bad checks provided both to justices of the peace and businesses. Id. at 284-285. Indeed, in the following years, several justice court judges were sanctioned by this Court for using criminal process or the threat thereof to collect civil debts. In re Odom,444 So.2d 835 (Miss. 1984); In re Lambert, 421 So.2d 1023 (Miss. 1982); In re Branan, 419 So.2d 145 (Miss. 1982). Allowing the District Attorney, the county's chief law enforcement officer, to process civil debt as a criminal proceeding flies in the face of our constitution and is as egregious as the system it was intended to replace. As the Fifth Circuit pointed out in Brown,
"[i]n considering the Mississippi fee system the relevant constitutional fact is that a judge's bread and butter depend on the number of cases filed in his court." Brown, 637 F.2d at 276. Likewise, when the District Attorney's bread and butter depends upon, or is enriched by, the fees collected in bad check cases[2], the special interests arising therefrom cannot be ignored.
¶ 20. Debtor's prison was abolished long ago. Our statutory system, nevertheless, allows for imprisonment of one who cannot pay all of the fines that may arise from "bouncing" a check. Further, while they may pursue actions for false pretenses, District Attorneys do not have the authority under our State Constitution or Miss. Code Ann. § 25-31-1, et seq. either to collect civil debts or to use criminal statutes to coerce payment of those debts and any fees and penalties which also might accrue. Moreover, the power to render fines and judgments belongs with the courts and not the District Attorney's Office. Miss. Code Ann. § 9-7-91. Accordingly, I do not think that the majority has gone far enough by recognizing only the fourteenth amendment problems or "hoping" that problematic debt collection practices are abandoned.
MILLS, J., joins this opinion.
[1] All at a cost to taxpayers well in excess of any social benefit derived from her prosecution and prison sentence. As the United States Supreme Court noted in Tate v. Short,401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), imprisonment of a defendant unable to pay his fine does not serve the state's purpose in collecting revenues because "his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment." 401 U.S. at 399, 91 S.Ct. 668.
[2] Pursuant to Miss. Code Ann. § 97-19-75(4)(1994), a district attorney can collect a $40.00 service charge from individuals accused of writing worthless checks who surrender themselves within ten days of receiving notice of a complaint. This procedure amounts to some district attorneys receiving hundreds of thousands of dollars per year for their offices.